IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| IN RE: | CASE NO. 11-06620 (ESL) |
| HOTEL AIRPORT, INC. | CHAPTER 11 |
| Debtor | |
| HOTEL AIRPORT, INC., | ADV. PROC. NO. 13-00259 (ESL) |
| Plaintiff | |
| vs. | |
| BEST WESTERN INTERNATIONAL INCORPORTED, *ET AL.* | |
| Defendants | |

OPINION AND ORDER (PROPOSED)

This case is before the court upon the *Motion to Dismiss Pursuant to Rule 12(b)(6)* (the "*Helms Defendants' Motion to Dismiss*", Docket No. 23) filed by Michael G. Helms and The Helms Law Firm, P.L.C. (the "Helms Defendants") and the *Motion and Memorandum of Law to Dismiss Complaint Pursuant to Fed. R. Bankr. P. 7012(b)* ("*Best Western's Motion to Dismiss*", Docket No. 24) filed by co-defendant Best Western International, Inc. ("Best Western"), both alleging that the *Complaint* fails to state a claim upon which relief may be granted against them. Also before the court is the Plaintiff's *Amended Opposition to Motion to Dismiss Filed by Best Western and Joinder by Helm's [sic] Defendants* and *Opposition to Helm's [sic] Defendants Motion to Dismiss* (Docket Nos. 42 and 43). For the reasons stated herein, the Helms Defendants' *Motion to Dismiss* (Docket No. 23) and *Best Western's Motion to Dismiss* (Docket No. 24) are hereby granted in part and denied in part.

Factual and Procedural Background

On March 7, 2008, Hotel Airport, Inc. (the "Plaintiff", "Hotel Airport" or "Debtor"), its voting member David A. Tirri ("Tirri") and Best Western entered into the *Best Western International Membership Application and Agreement* (the "*Membership Agreement*", Docket

-1-

No. 1-1, pp. 22-31).  Pursuant to the *Membership Agreement*, the Plaintiff affiliated its hotel property known as the San Juan Airport Hotel located in Carolina (near San Juan), Puerto Rico (the "Hotel"), with the flag of Best Western.  Upon Best Western's conditional approval of the *Membership Agreement*, Tirri became a Best Western member, the Plaintiff's Hotel became affiliated with Best Western, and the *Membership Agreement* became the contract controlling the relationship between the Plaintiff, Tirri and Best Western.  Pursuant to paragraph 20 of the *Membership Agreement*, Best Western granted to the Plaintiff the Best Western license (the "License"), allowing the Plaintiff to use the Best Western trademarks, name, and logos (the "Best Western Marks" or "Best Western Symbols") in connection with the Hotel, subject to the terms of the Best Western License for the agreed term.  Also pursuant to the *Membership Agreement*, the Plaintiff agreed that the License would terminate upon termination of the *Membership Agreement*.  See Docket No. 1-1, p. 26, ¶ 22.  In the event that the *Membership Agreement* was terminated, the Plaintiff agreed to "remove from public view and cease using" all Best Western Marks and all other references to Best Western, and to remove any device or design containing any part of any Best Western symbol, within fifteen (15) days of the date of termination.  See paragraph 22 of the *Membership Agreement*, Docket No. 1-1, p. 26, and Docket Nos. 24, p. 3, ¶ 3, and 42, p. 4, ¶ 3.  Paragraph 22 of the *Membership Agreement* also states that upon termination of the License, the Plaintiff would "actively take steps as may be necessary to cause the cessation of all advertising and distribution of promotional material containing any Best Western Symbol" (Docket No. 1-1, p. 26, ¶ 22).  Also see Docket Nos. 24, p. 3, ¶ 4, and 42, p. 4, ¶ 4.  Furthermore, upon termination of the *Membership Agreement*, the Plaintiff agreed "not to use anything consisting of or incorporating any one or more words, letters, designs or devices which contain any part of any Best Western Symbol or which singly or together are similar in spelling, sound, appearance or otherwise to any Best Western Symbol" (Docket No. 1-1, p. 26, ¶ 23).  Remedies for non-compliance included as follows:

> For each day during which any Best Western Symbol or any name, symbol or device described in paragraph 23 are used in connection with the Hotel, after fifteen (15) days following termination of this [*Membership Agreement*], Best

Western may elect to claim from [the Plaintiff] daily damages in an amount equal to fifteen percent (15%) of the mean of the Hotel's room rates per room per day multiplied by the total number of rooms.  This amount is payable by [the Plaintiff] whether or not [the Plaintiff] continues to exercise control over the operations of the Hotel.  It is understood and agreed that said amount is fixed as liquidated damages because of the difficulty of ascertaining the exact amount of damages that may be sustained because of such use.  It is further understood and agreed that said amount fixed as liquidated damages is a reasonable amount, considering the damages that Best Western will sustain in the event of such use.

Docket No. 1-1, p. 26, ¶ 24.

On August 5, 2011, the Plaintiff filed a voluntary Chapter 11 bankruptcy petition along with the corresponding schedules (Lead Case Docket No. 1).

On September 5, 2011, Best Western filed a *Notice of Appearance* through local counsel, to wit, Goldman, Antonetti & Cordova, P.S.C.  See Lead Case Docket No. 18.

On October 3, 2011, Best Western filed a *Motion for Order Limiting Time Within Which Debtor Must Assume or Reject Executory Contract* (Lead Case Docket No. 41) requesting an order to limit the time within which the Plaintiff could assume the *Membership Agreement*.  The court granted the Plaintiff 30 days to assume or reject the *Membership Agreement* on October 12, 2011 (Lead Case Docket No. 46).

On October 5, 2011, the Helms Defendants filed an *Application and Order for Admission Pro Hac Vice* (Lead Case Docket No. 43), which the court granted on October 14, 2011 (Lead Case Docket No. 47).

On November 11, 2011, the Plaintiff filed a *Motion Assuming Executory Contract with Best Western* (Lead Case Docket No. 54), that is, assuming the *Membership Agreement*, and stating that it would cure all pre-petition debts within 10 days of court approval.  The court granted the *Motion* on December 14, 2011 (Lead Case Docket No. 66).

On July 2, 2012, Best Western issued a letter[1] (the "*Termination Letter*") terminating the Plaintiff's Best Western membership and license as follows:

---

[1] The notification of the Termination Letter is in controversy.  See Docket No. 42, p. 4, ¶ 7.  Also in controversy is the fact that Hotel Airport "requested reconsideration of the termination and the denial of said termination was not sent until August 2, 2012" (Docket No. 42, p. 5, ¶ 8).

-3-

The Best Western [] Board of Directors met recently to discuss the membership status of the [Plaintiff's Hotel].  After full and complete consideration of the information provided, it was the decision to cancel all aspects of the property's membership effective immediately because the May 22, 2012 Quality Assurance Assessment report indicates the property failed to attain a minimum Guest Rooms/Public Areas Assessment score of 935 points (scored 824 points) and a passing score of at least 800 points on the Brand Identity, Category Two report (scored 760 points) as required in the continental extension letter dated February 13, 2012 [].

We have deleted the property's listing from our reservations system and cancelled your participation in Best Western's master credit card agreements.  You must take appropriate steps to discontinue all use of the Best Western name and logo at your property effective immediately.  You will be contacted within the next few days to confirm your arrangements to comply with this requirement.

Docket No. 1-1, p. 65.

On December 9, 2011, the Plaintiff filed its *Plan of Reorganization* and *Disclosure Statement* (Lead Case Docket Nos. 63 and 64), which were subsequently amended on November 9, 2012 (Lead Case Docket Nos. 189 and 190).  The amended *Plan of Reorganization* does not include Best Western as a creditor.

On January 4, 2013, the court approved the Plaintiff's *Disclosure Statement*, as amended.  See Lead Case Docket No. 224.

On February 7, 2013, the court scheduled a confirmation hearing for March 21, 2013. See Lead Case Docket No. 237.

On February 11, 2013, Best Western filed an *Objection [] to Confirmation of Plan of Reorganization* sustaining that the *Amended Plan of Reorganization* and the *Amended Disclosure Statement* proposed by the Plaintiff "are misleading in that they appear to represent that [the Plaintiff] has the ability to further assume a Best Western *Membership Agreement*, and to obtain the benefits of Best Western membership, when in fact the *Membership Agreement* ha[d] previously been terminated and [the Plaintiff] is no longer a Best Western member" (Lead Case Docket No. 239, p. 2, ¶ 8).  Accordingly, Best Western sustained that the "*Amended Plan of Reorganization* fail[ed] to comply with 11 U.S.C. § 1129(a)(1) and (2) in that the [Plaintiff]

-4-

ha[d] not complied with applicable provisions of the Bankruptcy Code by failing to adequately disclose the termination of the Best Western membership, or to provide adequate information as required by [Section] 1125 of the Bankruptcy Code" (Lead Case Docket No. 239, p. 2, ¶ 9). The *Objection* was filed through the Helms Defendants.

On February 13, 2013, the Plaintiff filed an *Answer to Best Western's Objection to Confirmation* (Lead Case Docket No. 240) asserting that it did not need to "re-assume" the *Membership Agreement* because it had already assumed it, although it had subsequently been terminated by Best Western. The Plaintiff acknowledged that the termination of the *Membership Agreement* "was due to certain interpretations by Best Western of the contract requirements with which [the Plaintiff] did not agree", that in "the exercise of its business judgment, [the Plaintiff] decided to negotiate its differences with Best Western, rather than litigate them" and that "[a]fter recently exhausting said negotiation efforts, [it] ha[d] decided that the franchise benefits are not worth the cost and requirements that Best Western insists upon" (Lead Case Docket No. 240, p. 2, ¶¶ 8, 9 and 10). Hence, the Plaintiff decided to "continue operating its hotel business (and effect its reorganization) without being under the Best Western membership, as it ha[d] done since July 2012" (Lead Case Docket No. 240, p. 2, ¶ 10).

On February 22, 2013, Best Western filed a *Motion to Withdraw Objection to Confirmation of Plan of Reorganization* (Lead Case Docket No 244) upon the clarifications made by the Plaintiff at Lead Case Docket No. 240. It was filed through the Helms Defendants.

On March 6, 2013, the Plaintiff filed a *Motion Submitting Documents Re: Plan*, which included a list of executory contracts to be assumed upon the confirmation of the *Plan*, which did not include the *Membership Agreement* with Best Western (Lead Case Docket No. 248, pp. 10-11).

At the hearing held on March 21, 2013, the court confirmed the Plaintiff's *Plan of Reorganization*, as amended, since all classes had accepted it and no objections were pending. See Lead Case Docket Nos. 206 and 261. The *Order Confirming Plan* was notified to the

Helms Defendants to their registered e-mail (*mghelms@mghlawfirm.com*)[2] through the Case Management/Electronic Case Filing system ("CM/ECF") in the Lead Case[3].

On April 26, 2013, the Plaintiff filed an *Application for Final Decree [and Discharge]* (Lead Case Docket No. 269) sustaining that it had paid all administrative expenses, that the confirmed *Plan of Reorganization* had been substantially consummated, that the Plaintiff had commenced making the distributions prescribed therein, that all remaining distributions prescribed by the plan would be made in accordance thereto, and that the case had been fully administered.

On May 10, 2013, Best Western filed an *Objection to Application for Final Decree, and Motion for Order Allowing Administrative Expense Claim* claiming that "there remains due and owing from [the Plaintiff] to Best Western for the Best Western services provided to [the Plaintiff] by reason of [the Plaintiff]'s assumption of the Best Western *Membership Agreement* in the amount of $40,711" prior to its termination on July 2, 2012 (Lead Case Docket No. 273, p. 2, ¶ 6). Accordingly, Best Western requested an order approving and directing payment of such amount as an administrative expense claim.

On May 22, 2013, the Plaintiff and Best Western filed a joint *Motion to Notify Settlement Agreement of Administrative Expenses Claim and Withdrawal of Objection to Final Decree* (the "*Settlement Agreement*", Lead Case Docket No. 278). The parties only notified having reached an agreement whereby the Plaintiff paid Best Western an amount agreeable to both. They did not file an agreement *per se*. In consideration of such agreement, Best Western withdrew its objection to the approval of the request for final decree. Id.

On May 23, 2013, the Plaintiff filed a *Motion Requesting Ruling on Application for Final Decree (No Pending Opposition)* (Lead Case Docket No. 279).

On June 5, 2013, the court entered an *Order Approving Settlement/Stipulation* (Lead Case Docket No. 280) and an *Order* granting the application for final decree (Lead Case Docket

---

[2] See Lead Case Docket No. 43, p. 1.
[3] Motions and orders processed through CM/ECF are "presumed to be served on the same date of the electronic filing". P.R. Elec. Power Auth. v. Vitol, Inc., 298 F.R.D. 23, 26 (D.P.R. 2014).

No. 281).   Also on June 5, 2013, the court entered the *Final Decree and Certificate of Consummation* whereby the Plaintiff was "released from all its dischargeable debts and liabilities except as provided in the *Plan* and *Order Confirming Plan*" (Lead Case Docket No. 282).

On July 24, 2013, the Helms Defendants filed a *Complaint* in the U.S. District Court for the District of Arizona (the "Arizona District Court"), Case No. 13-1498 (ROS) (the "*First Arizona Complaint*"), on behalf of their client (Best Western) seeking pre and post confirmation damages against the Plaintiff and Tirri for: (a) the Plaintiff's breach of contract for post-termination use of the Best Western Marks; (b) infringement of the Federal Trademark Infringement – Lanham Act § 32(l), 15 U.S.C. § 1114(l); (c) infringement of the False Designation of Origin and Unfair Competition – Lanham Act § 43(a), 15 U.S.C. § 1125; (d) the dilution of the distinctive quality of the Best Western Marks under the Federal Trademark Dilution Act, 15 U.S.C. § 1125(c); and (d) common law trademark infringement.  Best Western also sought preliminary and permanent injunctive relief enjoining Hotel Airport and Tirri from: (a) making any use of the Best Western Marks, any colorable imitation thereof, or any other confusingly similar marks; (b) displaying, authorizing, licensing or assisting or facilitating any other person's or entity's use of display of the Best Western Marks or any colorable imitation thereof; (c) using anything consisting of or incorporating any one or more words, letters, designs or devices that contain any component of the Best Western Marks, or which singly or together are similar in spelling, sound, appearance, or in any other manner to the Best Western Marks; (d) applying for, pursuing, or owning any applications or registrations, including without limitation any domain names, business names, corporate names, trade names, trademarks, service marks or d/b/as that contain any component of the Best Western Marks, any colorable imitation thereof, or any confusingly similar Marks; and (e) using any such Marks (or any imitations or marks confusingly similar thereto) anywhere on the Internet or elsewhere, including without limitation any use on or with any websites, domain names, metatags, key words, banner ads, or search engines.  Best Western also sought preliminary and permanent

injunctive relief for Hotel Airport to: (a) make an accounting of the profits derived by Hotel Airport by reason of its unlawful acts; (b) immediately and permanently remove all Best Western Marks as used on the premises of, or in reference to, the Hotel including (without limitation) any road signs, wall signs, or any other display or item bearing any of the Best Western Marks; (c) permit Best Western to remove any infringing signs, displays or items from the Hotel, and awarding Best Western all reasonable and necessary costs of such removal (in addition to whatever penalties the court may impose for failing to comply with the court's order to remove any infringing signs, displays, or items from the Hotel); (d) assign the ownership of any application or registration that contains any component of the Best Western Marks, any colorable imitation thereof, or any other confusingly similar Marks to Best Western, or, alternatively, to file all documents necessary to effectuate abandonment of such applications; (e) immediately assign the ownership of any application or registration that contains any component of the Best Western Marks, any colorable imitation thereof, or any other confusingly similar Marks to Best Western, or, alternatively, to file all documents necessary to effectuate Hotel Airport's abandonment of such applications or registrations; and (f) immediately notify all advertisers, search engines, and providers of related services that Hotel Airport is not affiliated with Best Western and are required to cause the cessation of all advertising and distribution of promotional material containing any of the Best Western Marks, any colorable imitation thereof, or any other confusingly similar marks. See Docket No. 1-1, pp. 32-47.

On August 23, 2013, Hotel Airport filed a *Motion to Quash Service and Dismiss Complaint* with the Arizona District Court sustaining that Best Western attempted to serve the *First Arizona Complaint* through the former's in-house accountant, which is insufficient service under Fed. R. Civ. P. 4(h)(1)(B) and Rule 4.4(e) of the Puerto Rico Rules of Civil Procedure, 32 L.P.R.A. Ap. V, R. 4.4(e) (2010). See Docket No. 23-1, p. 4-13, Exhibit A.

On September 25, 2013, the Arizona District Court issued an *Order* quashing the service of the *First Arizona Complaint* on Hotel Airport and ordering Best Western to complete service of process within the deadline established in Fed. R. Civ. P. 4. See Docket No. 23-1, pp. 14-16.

On September 30, 2013, Best Western filed an *Amended Complaint* with the Arizona District Court, Case No. 13-01498 (ROS), seeking post-confirmation damages from March 13, 2013 (the date of confirmation of Plaintiff's *Plan of Reorganization*) until the cease and desist of the alleged unlawful and unauthorized use of the Best Western Marks.  See Docket No. 1-1, p. 54, ¶ 25, and p. 59, Prayer for Relief A(1).  On paragraph 25 of the *Amended Complaint*, the Helms Defendants stated, on behalf of their client, Best Western, that the Plaintiff had "filed an Amended Chapter 11 Plan of Reorganization in its bankruptcy proceedings", that "on March 13, 2013, the United States Bankruptcy Court for the District of Puerto Rico entered an Order confirming [the Plaintiff]'s Amended Plan" and that "[t]he entry of confirmation of [the Plaintiff]'s Amended Plan discharged [the Plaintiff] from any claims that arose before the date of confirmation" (Docket No. 1-1, p. 54, ¶ 25).

On December 31, 2013, the Plaintiff filed a *Motion to Reopen Case…* (Lead Case Docket No. 287) requesting that the bankruptcy case be reopened so that the Plaintiff could file the instant adversary proceeding "to enjoin [Best Western] from further violating the discharge" (Lead Case Docket No. 287, p. 2, ¶ 7).

Also on December 31, 2013, the Plaintiff filed the instant *Complaint* (Docket No. 1-1) premised on the following causes of action: (1) violation of the discharge granted by the confirmed *Plan of Reorganization* pursuant to Section 542 of the Bankruptcy Code, the approved *Settlement Agreement* (Lead Case Docket No. 278) and the *Final Decree* (Lead Case Docket No. 282); (2) violation of the automatic stay under 11 U.S.C. § 362(a)(3); (3) injunctive relief for Best Western to cease its unlawful actions; (4) damages for incorrectly and illegally terminating the *Membership Agreement*; and (5) damages and injunctive relief under Puerto Rico Act No. 75, 10 L.P.R.A. §§ 278 *et seq.* ("Act No. 75"), and Act No. 21, 10 L.P.R.A. §§ 279 *et seq.* ("Act No. 21").  The Plaintiff avers that the *Complaint* "involves matters that are core proceedings, and matters that are non-core proceedings under 28 U.S.C. § 157.  As to the non-core proceedings, [the P]laintiff consents so that the bankruptcy judge may hear and determine said non-core matters under 28 U.S.C. § 157, and the entry of final orders by the

Bankruptcy Court, but expressly preserves its right to jury trial, and demands such trial by jury as to all issues so triable" (Docket No. 1-1, p. 2, ¶ 3).

On January 2, 2014, Best Western filed an *Objection to Debtor's Motion to Reopen Case* alleging that the Debtor had "consented to the termination of its Best Western membership, and has waived and is estopped from pursuing any claim arising from the termination of its membership" and that it had "failed to show any compelling reason for reopening its bankruptcy case" under 11 U.S.C. § 350(b) (Lead Case Docket No. 289, p. 3, ¶ 34, and p. 4, ¶ 54).

On January 7, 2014, the court granted the Debtor's *Motion to Reopen Case*. See Lead Case Docket No. 290.

Meanwhile, after several procedural motions seeking extensions of time to service Hotel Airport by publication, on January 22, 2014, Best Western filed with the Arizona District Court an *Application for Substitution of Counsel and Consent*, which was granted by that court on January 23, 2014. See Docket No. 23-1, pp. 17-19 and 21.

On January 31, 2014, Best Western filed a *Second Amended Complaint* with the Arizona District Court. See Docket No. 23-1, p. 3.

On February 5, 2014, Hotel Airport filed a second *Motion to Quash Service and Dismiss Complaint* with the Arizona District Court claiming that the publication of the summons was untimely and deficient. See Docket No. 23-1, p. 22-26.

On February 6, 2014, Best Western singed a *Waiver of the Service of Summons* for the instant adversary proceeding. See Docket No. 6, p. 3.

On February 20, 2014, Best Western filed a *Notice of Voluntary Dismissal Without Prejudice* with the Arizona District Court (Docket No. 23-1, p. 27) and the *First Arizona Complaint*, Case No. 13-01498 (ROS), was terminated through a *Minute Order* on February 20, 2014 (Docket No. 24-1, p. 2-3).

Upon Best Western's voluntary dismissal of the *First Arizona Complaint*, on February 25, 2014, Best Western filed a second *Complaint* against the Plaintiff and Tirri with the Arizona

District Court, Case No. 14-00372 (DGC) (the "*Second Arizona Complaint*"), seeking post confirmation damages[4] for: (a) the Plaintiff's breach of contract for post-termination use of the Best Western Marks; (b) breach of Tirri's guaranty; (c) breach of the implied covenant of good faith and fair dealing; (d) unjust enrichment; (e) infringement of the Federal Trademark Infringement – Lanham Act § 32(l), 15 U.S.C. § 1114(l); (f) infringement of the False Designation of Origin and Unfair Competition – Lanham Act § 43(a), 15 U.S.C. § 1125; (g) the dilution of the distinctive quality of the Best Western Marks under the Federal Trademark Dilution Act, 15 U.S.C. § 1125(c); and (h) common law trademark infringement.  Best Western also sought preliminary and permanent injunctive relief enjoining Hotel Airport and Tirri from: (a) making any use of the Best Western Marks, any colorable imitation thereof, or any other confusingly similar marks; (b) displaying, authorizing, licensing or assisting or facilitating any other person's or entity's use of display of the Best Western Marks or any colorable imitation thereof; (c) using anything consisting of or incorporating any one or more words, letters, designs or devices that contain any component of the Best Western Marks, or which singly or together are similar in spelling, sound, appearance, or in any other manner to the Best Western Marks; (d) applying for, pursuing, or owning any applications or registrations, including without limitation any domain names, business names, corporate names, trade names, trademarks, service marks or d/b/as that contain any component of the Best Western Marks, any colorable imitation thereof, or any confusingly similar Marks; and (e) using any such Marks (or any imitations or marks confusingly similar thereto) anywhere on the Internet or elsewhere, including without limitation any use on or with any websites, domain names, metatags, key words, banner ads, or search engines.  Best Western also sought preliminary and permanent injunctive relief for Hotel Airport to: (a) immediately and permanently remove all Best Western Marks as used on the premises of, or in reference to, the Hotel including (without limitation) any road signs, wall signs, or any other display or item bearing any of the Best Western Marks; (b) permit Best Western to remove any infringing signs, displays or items from the Hotel, and

---

[4] <u>See</u> Docket No. 24-2, p. 8, ¶ 28.

awarding Best Western all reasonable and necessary costs of such removal (in addition to whatever penalties the court may impose for failing to comply with the court's order to remove any infringing signs, displays, or items from the Hotel); (c) assign the ownership of any application or registration that contains any component of the Best Western Marks, any colorable imitation thereof, or any other confusingly similar Marks to Best Western, or, alternatively, to file all documents necessary to effectuate abandonment of such applications; (d) immediately assign the ownership of any application or registration that contains any component of the Best Western Marks, any colorable imitation thereof, or any other confusingly similar Marks to Best Western, or, alternatively, to file all documents necessary to effectuate Hotel Airport's abandonment of such applications or registrations; and (e) immediately notify all advertisers, search engines, and providers of related services that Hotel Airport is not affiliated with Best Western and are required to cause the cessation of all advertising and distribution of promotional material containing any of the Best Western Marks, any colorable imitation thereof, or any other confusingly similar marks. See Docket Nos. 24, p. 6, ¶ 19, and 24-2.

On April 7, 2014, the Helms Defendants, former attorneys for Best Western in the *First Arizona Complaint*, filed a *Motion to Dismiss* (Docket No. 23) for failure to state a claim upon which relief may be granted against them. They acknowledge that the *First Arizona Compliant* filed by them in representation of Best Western "mistakenly requested damages against [Hotel Airport] for time periods both before and after the March 13, 2013, Plan Confirmation Date" (Docket No. 23, p. 4). They argue, however, that dismissal under Fed. R. Civ. P. 12(b)(6) is proper because, as to the first cause of action, "there is no private right of action under 11 U.S.C. § 524 and § 105, and Defendants' acts do not warrant a finding of contempt under § 105 and did not cause [Hotel Airport] any actual damages". Id. at p. 2. They also aver that the Plaintiff's "Third Cause of Action fails to state a claim against the Helms Defendants both because the [*First Arizona Complaint*] has been dismissed and because the [subsequent] *Amended Complaint* did not violate the Bankruptcy Code". Id. The Helms Defendants also

assert that the injunctive relief sought in the *Complaint* is moot because the *First Arizona Complaint* was voluntarily dismissed. See id. at p. 13-14.

On April 7, 2014, Best Western also filed a *Motion to Dismiss* (Docket No. 24) under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted because: (1) an alleged violation of the discharge injunction under Section 524 of the Bankruptcy Code does not create a private right of action, and even if there were, the complaints filed by Best Western at the Arizona District Court did not (and do not) violate the Plaintiff's bankruptcy discharge; (2) Best Western did not violate the automatic stay of Section 362 of the Bankruptcy Code when it terminated its membership agreement with Plaintiff; (3) the Plaintiff is judicially estopped from asserting any claims related to the termination of the *Membership Agreement*; (4) the Plaintiff's alleged breach of contract claim for termination is time barred under the laws of Arizona (made applicable in this case pursuant to a contractually binding choice of law provision in the *Membership Agreement*); and (5) the Plaintiff failed to state a claim under Act No. 75 and Act No. 21. In regards to the alleged violation to the *Settlement Agreement*, Best Western sustains that it only resolved Best Western's objection to the final decree, nothing else, which was based solely on the "Plaintiff's failure to pay pre-termination membership fees, and had nothing to do with the Debtor's concealed and unauthorized use of the Best Western Marks" (Docket No. 24, p. 11, ¶ 2).

On April 8, 2014, the Helms Defendants filed a *Joinder in Defendant Best Western's Motion and Memorandum of Law to Dismiss Complaint* (Docket No. 25).

On April 22, 2015, the Plaintiff filed a *Motion Requesting Order Denying Motions to Dismiss for Failure to Comply With Local Rule 9013-1(c)(1)* (Docket No. 26) for failure to include the objection language required in LBR 9013-1(c)(1).

On April 24, 2014, Best Western filed a *Response to [the Plaintiff's] Motion Requesting Order Denying Motion to Dismiss for Failure to Comply with Local Rule 9013-1(c)(1)* (Docket No. 27) arguing that LBR 9013-1(c)(1) "does not govern motions filed in an adversary

proceedings" (Docket No. 27, p. 2) and that the motion filed by the Plaintiff was frivolous, improper and sanctionable under Fed. R. Bank. P. 9011(c)(1)(b).

On April 24, 2014, the Plaintiff filed a *Reply to Best Western's Response to Motion Requesting Order Denying Motions to Dismiss for Failure to Comply With Local Rule 9013-1(c)(1)* (Docket No. 29) averring that the requirements set in LBR 9013-1(c) apply to "all papers" and that failure to include the objection language required therein constitutes cause to deny the motion.

On May 5, 2014, the court entered two *Orders* (Docket Nos. 34 and 35) denying the *Motion Requesting Order Denying Motions* and ordering the Plaintiff to file its opposition to the motions to dismiss filed by the Defendants within twenty one (21) days.

After requesting an extension of time (Docket No. 39), which the court granted (Docket No. 40), on May 29, 2014 the Plaintiff filed an *Amended Opposition to Motion to Dismiss Filed by Best Western and Joinder by Helm's [sic] Defendants* (Docket No. 42). It argues that the Defendants' *Motions to Dismiss* rely on documents that are outside the realm of the pleadings because, although the *First and Second Complaints* filed with the Arizona District Court are public documents, the documents attached thereto are not and hence, if the court is "going to entertain documents or matters outside the pleadings (ei [*sic*], the documents attached to the complaints), the [Plaintiff] requests that the court inform [the] Plaintiff of its decision to do so and allow it time to oppose the motion for summary judgment pursuant to [Fed. R. Civ. P.] 12(d)" (Docket No. 42, p. 3, ¶ 5). The Plaintiff contends that it has a property right to claim discharge violation damages under Sections 105 and 524 of the Bankruptcy Court because the U.S. Court of Appeals for the First Circuit (the "First Circuit") has held that "a court is well within its authority under § 105(a) to enforce a specific code provision, such as 11 U.S.C. § 524" (Docket No. 42, p. 8, ¶ 3). The Plaintiff also sustains that because the *Settlement Agreement* (Lead Case Docket No. 278) reached with Best Western "does not limit the settled administrative claims to the alleged 'pre-termination' fees, it is obvious that it includes all administrative claims" (Docket No. 42, p. 9, ¶ 10). The Plaintiff claims that "any alleged pre-

confirmation damages had to be claimed in the bankruptcy court" and that the *First Arizona Complaint* "was a breach of the [Plaintiff's] discharge" for which Best Western "should be held accountable" (Docket No. 42, p. 13, ¶¶ 28 and 29). In regards to the violation of the automatic stay, the Plaintiff argues that the "*Membership Agreement* was not validly terminated since the [*Termination*] *Letter* and related actions by [Best Western] were made in violation of the automatic stay", that Best Western did not seek an order from this court to lift or modify of the stay prior to terminating it, and thus, the termination constitutes "null and void actions" for which it is entitled to compensation under 11 U.S.C. § 362(k) (Docket No. 42, p. 13, ¶ 30, and pp. 16-17, ¶¶ 47 and 50). The Plaintiff also avers that it is not *estopped* from challenging the termination of the *Membership Agreement* because the *Settlement Agreement* did not release Best Western from the violation of the automatic stay. Id. at p. 18, ¶ 54. It also argues that the cause of action for breach of contract is not untimely because Best Western did not comply with the Arizona Statutes that regulate the termination of the *Membership Agreement* and that in any case, the cause of action was brought under Puerto Rico law, which provides a statute of limitation of 15 years pursuant to Article 1864 of the Civil Code of Puerto Rico, 31 L.P.R.A. § 5294. The Plaintiff sustains that the applicability of Act No. 75 is a factual matter and should be viewed in light of the evidence presented at a trial, not a motion to dismiss, and acknowledges that Act No. 21 is inapplicable. Id. at p. 21, ¶¶ 77 and 79. The Plaintiff reiterates that injunctive relief under Act No. 75 is proper to enjoin the Defendants from terminating the *Membership Agreement*. Id. at p. 22, ¶ 82.

Also on May 29, 2014, the Plaintiff filed an *Opposition to Helm's [sic] Defendants Motion to Dismiss* (Docket No. 43) reiterating that courts have the authority under 11 U.S.C. § 105 to enforce discharge injunctions. It sustains that the actions taken by the Helms Defendants in the *First Arizona Complaint* were coercive and that, in the alternative, this would constitute a factual issue that would have to be determined at trial. Id. at p. 7, ¶ 6. Hotel Airport also avers that it suffered actual damages and that "at this stage [the] Plaintiff does not have to prove its case, it only has to properly allege a set of facts that if true would entitle [it] to a relief" (Docket

No. 43, p. 9, ¶ 17).  It also contends that the Defendants "may not avoid responsibility simply by dismissing the first complaint and filing a second one" and "should be enjoined from filing [] any complaint related to the termination of the *Membership Agreement* as a violation of the automatic stay and the bankruptcy discharge", although "if the Helms Defendants no longer represent [Best Western]…, then the injunction does not affect them in any way" (Id. at p. 9, ¶ 24, and p. 10, ¶¶ 25 and 26).

On June 5, 2014, the Helms Defendants filed a *Motion for Leave to File Reply to Plaintiff's Opposition to Helms Defendants' Motion to Dismiss* (Docket No. 45) claiming that the Plaintiff raised new issues and misstatements in its *Opposition* that warrants a reply, which the court granted on June 9, 2014 (Docket No. 48).  Hence, the Helms Defendants tendered their *Reply to Plaintiff's Opposition to Helms Defendants' Motion to Dismiss Pursuant to Rule 12(b)(6)* (Docket No. 46) arguing that: (a) none of the documents attached to their *Motion to Dismiss* requires the court to convert it to a motion for summary judgment because "[t]he authenticity of these documents are not disputed by the parties and they are attachments to the Complaint, documents central to [the P]laintiffs' claim, public records, and/or facts susceptible to judicial notice" (Docket No. 46, p. 2); (b) there is no private right of action under 11 U.S.C. §§ 105 and 524, but rather in the First Circuit "bankruptcy court[s] --not a private party-- may use its statutory contempt power under §105 to enforce a §524 discharge injunction and order damages, if the merits so require", which "does not equate to a 'private right of action'" but rather "such damages are only available in the discretion of the court pursuant to its § 105 contempt power, … if the merits so require … and the creditor acted in such a way as to coerce or harass the debtor improperly" (Id. at pp. 4-5, citations omitted); (c) in filing the *First Arizona Complaint*, the Helms Defendants actions did not constitute a discharge violation nor have an actual improper coercive or harassing effect on the Plaintiff under the scope of Pratt v. GMAC (In re Pratt), 462 F.3d 14 (1st Cir. 2006) (Id. at p. 5); (d) the *First Arizona Complaint* against Tirri did not create a discharge violation because he is independently responsible to Best Western personally, jointly and severally (Id. at p. 7); and (e) Best Western voluntarily

dismissed the *First Arizona Complaint* without prejudice and the Helms Defendants do not represent Best Western in the *Second Arizona Complaint* (Id. at p. 8).

Also on June 5, 2014, Best Western filed a *Motion for Leave to File Reply to Plaintiff's Opposition to the Motion to Dismiss and Extension of Time* (Docket No. 47) requesting leave to reply to *Amended Opposition to Motion to Dismiss Filed by Best Western and Joinder by Helm's [sic] Defendants* (Docket No. 42) filed by the Plaintiff and it also requested until June 16, 2014 to do so. The *Motion* was granted on June 9, 2014 (Docket No. 49).

On June 16, 2014, Best Western and co-defendant Cheryl Pollack[5] ("Pollack") filed a *Reply ... to Plaintiff's Amended Opposition to Motion to Dismiss* (Docket No. 52) wherein they reiterate that: (1) the Plaintiff has no private cause of action under 11 U.S.C. § 524 for the alleged violation of discharge injunction and may only seek compensatory civil contempt through a contested matter in the lead case; (2) Best Western and Pollack did not violate the discharge order because the Confirmation Order and Final Decree did not discharge the Plaintiff from its obligation to pay administrative priority expenses and Section 503(a) does not set a time for filing a request for allowance or payment of such expenses; (3) the Plaintiff is judicially estopped from asserting any claims against Best Western and Pollack arising out of the termination of the *Membership Agreement* because it had previously acknowledged that it would "continue operating its hotel business (and effect its reorganization) without being under the Best Western membership, as it has done since July 2012" (Docket No. 52, p.7); (4) the Plaintiff's breach of contract cause of action is time barred under Arizona Law, which is the applicable law pursuant to "choice of law provision" established in paragraph 27 of the *Membership Agreement*; and (5) Act No. 75 is not applicable to the *Membership Agreement* because "instead of developing a market for [Best Western] as required for [Act No.] 75 protection, it was [Best Western] who allowed [the] Plaintiff to associate its local hotel operations with [Best Western]'s well-known brand name and marks" (Docket No. 52, p. 13, l).

---

[5] This is Ms. Pollack's first appearance in the instant adversary proceeding, who the Plaintiff alleged to be or had been "a director in Best Western" (Docket No. 1-1, p. 3, ¶ 9).

On June 24, 2014, the Helms Defendants filed a *Joinder in Defendants Best Western's Reply to Plaintiff's Opposition to the Motion to Dismiss Adversary Complaint* (Docket No. 53).

On August 20, 2014, this court entered an *Order* (Docket No. 58) stating that since all parties had made reference in their arguments to a stipulation reached and notified through the *Motion to Notify Settlement Agreement of Administrative Expense Claim and Withdrawal of Objection to Final Decree* (Lead Case Docket No. 278) and no party had attached a copy of the actual settlement agreement or stipulation, to properly consider the arguments at hand, the court directed the parties to jointly or separately file a copy of the settlement agreement or stipulation referred at Lead Case Docket No. 278 within 7 days.

On August 21, 2014, the Plaintiff filed a *Motion in Compliance with Order* (Docket No. 59) stating that "[o]ther than [Lead Case] docket 278 (*Motion to Notify Settlement Agreement of Administrative Expense Claim and Withdrawal of Objection to Final Decree*) and Exhibit 6 to our *Memorandum in Opposition* ([Lead Case] Dkt. 323; Payment of the settled amount) there is no written settlement stipulation". The Plaintiff also attached a series of emails between its counsel and Best Western's local counsel that led up to the joint filing of the *Motion to Notify Settlement Agreement of Administrative Expense Claim and Withdrawal of Objection to Final Decree* (Lead Case Docket No. 278). See Docket No. 59-1, pp. 1-5. The payment referred to in paragraph 11 of Lead Case Docket No. 278 was made payable to Best Western on May 20, 2013 in the amount of $20,000.00. See Lead Case Docket No. 323-6, p. 2.

On August 26, 2014, Best Western filed a *Motion in Compliance with Court Order[]…*informing that "aside from the *Motion to Notify Settlement Agreement of Administrative Expense Claim and Withdrawal of Objection to Final Decree* at Lead Case Docket No. 278, there is no other separate document, stipulation or agreement between [Best Western] and [the] Debtor. That is, the entire agreement at that time between [Best Western] and [the] Debtor is contained in that sole document at Lead Case Docket No. 278" (Docket No. 61, p. 1, ¶ 2). Best Western also contends that "no other claim for administrative expense was settled between [Best Western] and [the] Debtor other than those relating to ***pre-termination*** membership fees" and that "[t]here is no

-18-

evidence before this court that [Best Western] or the Debtor either intended or did settle the current claim by [Best Western] in the Lead Case for the improper use of its trademarks by Debtor ***post-termination*** of the *Membership Agreement*" (Id. at p. 2, ¶ 4) (original emphasis).

On August 28, 2014, the Helms Defendants filed a *Joinder in ... Best Western's Motion in Compliance...* (Docket No. 62).

Jurisdiction

Section 157 of the U.S. Judicial Code distinguishes between core proceedings and non-core proceedings. It "does not provide the bankruptcy courts with the full authority over all matters as to which a district court may exercise jurisdiction under Section 1334. Pursuant to 28 U.S.C. § 157(b)(1), a bankruptcy judge may hear and determine all ... core proceedings arising under title 11 ... and may enter appropriate orders and judgments, subject to review [under 28 U.S.C. § 158]. A core proceeding, for bankruptcy jurisdictional purposes, is an action that has as its foundation the creation, recognition, or adjudication of rights that would not exist independent of a bankruptcy environment." In re Med. Educ. & Health Servs., Inc., 459 B.R. 527, 545 (Bankr. D.P.R. 2011) (citations and quotations omitted).

"It is the bankruptcy court's responsibility to determine whether each claim before it is core or non-core. For core proceedings, the statute contains a nonexhaustive list." Executive Benefits Ins. Agency v. Arkison, 134 S.Ct. 2165, 2171 (2014). "The statute authorizes bankruptcy judges to hear and determine such claims and enter appropriate orders and judgments on them." Id. "As for 'non-core' proceedings --*i.e.,* proceedings that are 'not core' but are otherwise related to a case under title 11-- the statute authorizes a bankruptcy court to hear the proceeding, and then submit proposed findings of fact and conclusions of law to the district court. The district court must then review those proposed findings and conclusions *de novo* and enter any final orders or judgments. There is one statutory exception to this rule: if all parties 'consent', the statute permits the bankruptcy judge to hear and determine and to enter appropriate orders and judgments as if the proceeding were core. Id. at 2172 (quotations and citations omitted). "The First Circuit defines non-core proceedings as claims concerned only

with state law issues that did not arise in the core bankruptcy function of adjudicating debtor-creditor rights." In re Caribbean Petroleum Corp., 443 B.R. 560, 566 (Bankr. D.P.R. 2010) (citations and quotations omitted). Also see In re Arnold Print Works, Inc., 815 F.2d 165, 167 (1st Cir. 1987).

The *Complaint* in the instant adversary proceeding is comprised of six causes of action. Under 28 U.S.C. § 157(b)(2)(A) and (G) and 11 U.S.C. § 105, the following three are core proceedings: (1) damages for the alleged violation of the discharge under the confirmed *Plan of Reorganization*; (2) damages for the alleged violation of the automatic stay; and (3) injunctive relief for Defendants to cease and desist from its *Second Arizona Complaint*. The remaining three causes of actions are non-core, to wit: (1) the alleged breach of the *Membership Agreement* under Articles 1077 and 1084 of the Civil Code of Puerto Rico, 31 L.P.R.A. §§ 3052 and 3081; (2) damages for the alleged violation to Act No. 75; and (3) damages for the alleged violation to Act No. 21. The Plaintiff alleged supplemental jurisdiction for the breach of contract cause of action under 28 U.S.C. § 1367. See paragraph 2 of the *Complaint* (Docket No. 1-1, p. 2, ¶ 2) ("[t]his Court may and should exercise said supplemental jurisdiction to claims under Article 1077 of the Puerto Rico Civil Code, 31 Laws P.R. Ann. § 3052, and under section 3081, 31 Laws P.R. Ann. § 3081 for breach of contract, as well as those under other PR statutory provisions set forth in this complaint"). These claims do not arise under or relate to the Bankruptcy Code, but rather constitute state law claims, which are non-core pursuant to 28 U.S.C. § 157(c)(1). Moreover, the Plaintiff also demanded "trial by jury as to all issues so triable" (Docket No. 1-1, p. 2, ¶ 3).

The main cause of action in the instant adversary proceeding over which the remaining allegations hinge is whether the termination of the *Settlement Agreement* was or not lawful and whether or not such termination warrant damages, which is a non-core proceeding. The Defendants have not consented to having this court hear and determine non-core matters. Hence, the court will only issue the instant *Opinion and Order* as proposed findings of fact and

conclusions of law for the U.S. District Court for the District of Puerto Rico to review and enter a final order pursuant to Fed. R. Bankr. P. 9033.

Applicable Law & Analysis

*(A)     Standard for Motions to Dismiss under Fed. R. Civ. P. 12(b)(6)*

The *Helms Defendants' Motion to Dismiss* (Docket No. 23) and *Best Western's Motion to Dismiss* (Docket No. 24) seek dismissal of the *Complaint* for failure to state a claim upon which relief can be granted against them under Fed. R. Civ. P. 12(b)(6).

Fed. R. Civ. P. 12 is applicable to bankruptcy proceedings through Fed. R. Bankr. P. 7012.  The purpose of a motion to dismiss under Fed. R. Civ. P. 12(b)(6) is to assess the legal feasibility of a complaint, not to weigh the evidence which the plaintiff offers or intends to offer.  See Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779 (2nd Cir. 1984); Citibank, N.A. v. K-H Corp., 745 F. Supp. 899, 902 (S.D.N.Y. 1990); Wright & Miller, Federal Practice and Procedure: Civil 3d § 1356 (2013).

Fed. R. Civ. P. 8(a)(2), applicable to adversary proceedings through Fed. R. Bankr. P. 7008, mandates that complaints contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  "Although detailed factual allegations are not required, the Rule does call for sufficient factual matter".  Surita Acosta v. Reparto Saman Inc. (In re Surita Acosta), 464 B.R. 86, 90 (Bankr. D.P.R. 2012).  Therefore, to survive a Fed. R. Civ. P. 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter that, accepted as true, "state[s] a claim to relief that is plausible on its face."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).  A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  Id. at 556.  The Twombly standard was further developed in Ashcroft v. Iqbal, 556 U.S. 622 (2009), advising lower courts that "determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  556 U.S. at 679.  "In keeping with these principles, a court considering a motion to dismiss can choose to begin by identifying pleadings that, because

they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id. at 679.  In sum, allegations in a complaint cannot be speculative and must cross "the line between the conclusory and the factual". Peñalbert-Rosa v. Fortuño-Burset, 631 F.3d 592, 595 (1st Cir. 2011).  "[A]n adequate complaint must provide fair notice to the defendants and state a facially plausible legal claim." Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 11 (1st Cir. 2011).

In Schatz v. Republican State Leadership Committee, 669 F.3d 50, 55 (1st Cir. 2012), the First Circuit established a two-step standard for motions to dismiss under Fed. R. Civ. P. 12(b)(6).  Step one: isolate legal conclusions.  Step two: take the complaint's well-pleaded (non-conclusory) allegations as true, drawing all reasonable inferences in favor of the plaintiff and determine if they plausibly narrate a claim for relief.  Also see Carrero-Ojeda v. Autoridad de Energía Eléctrica, 755 F.3d 711, 719-720 (1st Cir. 2014) (applying the two-step standard for established in Schatz); Pérez v. Rivera (In re Pérez), 2013 WL 1405747 at *3, 2013 Bankr. LEXIS 1561 at **9-10 (Bankr. D.P.R. 2013); Zavatsky v. O'Brien, 902 F. Supp. 2d 135, 140 (D. Mass. 2012).

To consider a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "[t]he court is not limited to the four corners of the complaint". Wright & Miller, Federal Practice and Procedure: Civil 3d § 1357 (2013).  The court may consider the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference into the pleadings, and matters of which the judge may take judicial notice.  See Fed. R. Civ. P. 10(c) (documents attached to pleadings are part of pleadings); Young v. Lepone, 305 F.3d 1, 11 (1st Cir. 2002) (district court was entitled to consider letters that were not attached to complaint when complaint contained extensive excerpts from letters and references to them; when factual allegations of complaint revolved around document whose authenticity is unchallenged, that document effectively merges into the pleadings); and Lovelace v. Software Spectrum Inc., 78 F.3d 1015, 1017-1018 (5th Cir. 1996)

(courts must limit inquiry to facts stated in complaint and documents either attached to or incorporated in complaint; however, courts may also consider matters of which they may take judicial notice).  Also see In re Surita Acosta, 464 B.R. at 91.  Moreover, when the complaint's factual allegations are expressly linked to and admittedly dependent on a document which authenticity is not challenged, the document effectively merges into the pleadings and the court can review it in deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6).  See Martí Navarro v. U.S., 104 F. Supp. 2d 96, 100 fn. 3 (D.P.R. 2000), citing Beddall v. State Street Bank & Trust Co., 137 F.3d 12, 17 (1st Cir. 1998) ("when … a complaint's factual allegations are expressly linked to --and admittedly dependent upon-- a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6)"); Computer Warehouse, 83 F. Supp. 2d 256, 258 (D.P.R. 2000) ("[w]hile in ruling upon a motion to dismiss the court must ordinarily ignore matters outside the pleadings … it may consider any documents which are referred to in the nonmovant's pleadings and which are central to his or her claim"); BPP Retail Properties, LLC v. North American Roofing Services, Inc., 2014 WL 1301959 (D.P.R. 2014) ("the First Circuit … has recognized an exception permitting courts to consider 'documents the authenticity of which are not disputed by the parties,' Rivera v. Centro Medicode Turabo, Inc., 575 F.3d 10, 15 (1st Cir. 2009), containing '(a) 'implications from documents' attached to or fairly 'incorporated into the complaint,' (b) 'facts' susceptible to 'judicial notice,' and (c) 'concessions' in plaintiff's 'response to the motion to dismiss'"); Arturet-Vélez v. R.J. Reynolds Tobacco Co., 429 F.3d 10, 13 n. 2 (1st Cir. 2005) (the court can consider under the scope of Fed. R. Civ. P. 12(b)(6) "implications from documents incorporated into the complaint, and concessions in the complainant's response to the motion to dismiss"); United States v. Wilson, 631 F.2d 118, 119 (9th Cir. 1980) ("In particular, a court may take judicial notice of its own records in other cases, as well as the records of an inferior court in other cases.")  "These items may be considered by the [trial] judge without converting the motion into one for summary

judgment.  These matters are deemed to be a part of every complaint by implication." Wright & Miller, Federal Practice and Procedure: Civil 3d § 1357 (2013).

In the instant case, the court will consider the *Motions to Dismiss* under Fed. R. Civ. P. 12(b)(6) and to do so, the court will take judicial notice of the allegations made by the parties in Lead Case No. 11-06620 (ESL) and the *First and Second Arizona Complaints* and related motions filed in those cases, which were attached to the *Complaint* (Docket No. 1-1, pp. 32-64) and the *Motions to Dismiss* (Docket No. 23-1, pp. 1-29; Docket Nos. 24-1 and 24-2).  The court will also consider the *Membership Agreement* and the *Termination Letter* attached to the *Complaint* (Docket No. 1-1, pp. 22-31 and 65-66) and related document, which authenticities has not been disputed.  Following the two-step standard established in Schatz v. Republican State Leadership Committee*, supra*, the court will isolate legal conclusions and take the *Complaint*'s well-pleaded, non-conclusory allegations as true, drawing all reasonable inferences in favor of the Plaintiff and determine if they plausibly narrate a claim for relief.

*(B)    Judicial Estoppel*

In Perry v. Blum, 629 F.3d 1, 8-9 (1st Cir. 2010), the First Circuit summarized the doctrine of *judicial estoppel* as follows:

> The doctrine of judicial *estoppel* is equitable in nature.  It operates to prevent a litigant from taking a litigation position that is inconsistent with a litigation position successfully asserted by him in an earlier phase of the same case or in an earlier court proceeding.  InterGen N.V. v. Grina*,* 344 F.3d 134, 144 (1st Cir. 2003).  The purpose of the doctrine is to protect the integrity of the judicial process.  It is typically invoked when a litigant tries to play fast and loose with the courts.  New Hampshire v. Maine*,* 532 U.S. 742, 749-750 (2001); Alternative Sys. Concepts, Inc. v. Synopsys, Inc., 374 F.3d 23, 33 (1st Cir. 2004); Patriot Cinemas, Inc. v. Gen. Cinemas Corp.*,* 834 F.2d 208, 212 (1st Cir. 1987).

> The contours of judicial *estoppel* are hazy.  But even though its elements cannot be reduced to a scientifically precise formula, New Hampshire*,* 532 U.S. at 750, courts generally require the presence of three things before introducing the doctrine into a particular case.  First, a party's earlier and later positions must be clearly inconsistent.  Id.; Alt. Sys. Concepts*,* 374 F.3d at 33.  Second, the party must have succeeded in persuading a court to accept the earlier position.  New Hampshire, 532 U.S. at 750; Alt. Sys. Concepts, 374 F.3d at 33.  Third, the party seeking to assert the inconsistent position must stand to derive an unfair

advantage if the new position is accepted by the court. New Hampshire, 532 U.S. at 751; Alt. Sys. Concepts, 374 F.3d at 33.

Ordinarily, the party against whom *judicial estoppel* is invoked must be the same party who made the prior (inconsistent) representation. See InterGen, 344 F.3d at 144 (explaining that judicial *estoppel* "prevents a litigant from pressing a claim that is inconsistent with a position taken by that litigant" in the same or an earlier proceeding); Brewer v. Madigan, 945 F.2d 449, 455 (1st Cir. 1991) (explaining that judicial *estoppel* prevents "a party from taking a position inconsistent with one successfully and unequivocally asserted by that same party in a prior proceeding"). Courts normally refuse to apply *judicial estoppel* to one party based on the representations of an unrelated party. See *e.g.,* Parker v. Wendy's Int'l, Inc., 365 F.3d 1268, 1272 (11th Cir. 2004); Bethesda Lutheran Homes & Servs., Inc. v. Born, 238 F.3d 853, 858 (7th Cir. 2001); Tenn. ex rel. Sizemore v. Surety Bank, 200 F.3d 373, 381-382 (5th Cir. 2000); see also 18B Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4477, at 618-619 (2nd ed. 2002). Nevertheless, courts sometimes have allowed *judicial estoppel* when the *estopped* party was responsible in fact for the earlier representation, see *e.g.,* Ladd v. ITT Corp., 148 F.3d 753, 756 (7th Cir. 1998), or when the *estopped* party was the assignee of a litigation claim or assumed the original party's role, see 18B Wright *et al.*, *supra,* § 4477, at 618-619.

Perry v. Blum, 629 F.3d at 8-9.

When the controversy of whether the *Membership Agreement* was or not validly terminated arose in the Lead Case of the instant adversary proceeding between the Plaintiff and Best Western's upon the latter's *Objection ... to Confirmation* (Lead Case Docket No. 239), the Plaintiff represented to the court that:

Best Western is correct in stating that the [*Membership Agreement*] was terminated in 2012, after the 2011 assumption.

Said termination was due to certain interpretations by Best Western of the contract requirements with which debtor [Plaintiff] did not agree.

**In the exercise of its business judgment, debtor [Plaintiff] decided to negotiate its differences with Best Western, rather than litigate them.**

After recently exhausting said negotiation efforts, debtor [Plaintiff] has decided that the franchise benefits are not worth the cost and requirements that Best Western insists upon. **Hence, debtor [Plaintiff] shall continue operating its hotel business (and effect its reorganization) without being under the Best Western membership, as it has done since July 2012**.

Lead Case Docket No. 240, p. 2, ¶¶ 7, 8, 9 and 10 (emphasis added).

Upon that representation by the Plaintiff, Best Western withdrew its *Objection ... to Confirmation* (Lead Case Docket No. 239, p.1, ¶ 3), and the court confirmed the *Plan of Reorganization* with no objections.  See Lead Case Docket Nos. 260 (*Minute Entry*) and 261 (*Order Confirming Plan*).  The court also notes that the *Motion Submitting Documents Re: Plan* filed 14 days prior to the confirmation hearing did not include the *Membership Agreement* as an executory contract to be assumed upon confirmation (Lead Case Docket No. 248, p. 10-11).  Nor did the *Plan of Reorganization* include Best Western as a creditor.

The foregoing complies with the three requirements set in Perry v. Blum, 629 F.3d at 8-9.  First, the Plaintiff's position in Lead Case Docket No. 240, p. 2, ¶ 10, to wit, that after "exhausting said negotiation efforts, debtor [Plaintiff] has decided that the franchise benefits are not worth the cost and requirements that Best Western insists upon" and that it would "continue operating its hotel business (and effect its reorganization) without being under the Best Western membership, as it has done since July 2012", is inconsistent with the fourth cause of action in the *Complaint* alleging that "the Best Western Membership and the [*Membership Agreement*] were incorrectly and illegally terminated and this has caused substantial monetary damages to the [Plaintiff] in the form of loss income and damage to its business reputation" (Docket No. 1-1, p. 15, ¶ 91).  Second, the Plaintiff succeeded in persuading this court to accept its earlier position because based upon it, Best Western withdrew its objection to confirmation (Lead Case Docket No. 244) and the court confirmed the *Plan of Reorganization* (Lead Case Docket Nos. 260 and 261).  Third, the Plaintiff would derive an unfair advantage if it is permitted it to prosecute the instant *Complaint* to challenge the lawfulness of the termination of the *Membership Agreement* and seek damages when it confirmed its Plan based on the premise that it would "continue operating its hotel business (and effect its reorganization) without being under the Best Western membership" (Lead Case Docket No. 240, p. 2, ¶ 10).

The court also weighs that the Plaintiff did not file the instant *Complaint* until after being served with the *First Arizona Complaint* on August 2, 2013.  Compare Docket No. 23-1, p. 10 with Docket No. 1-1.

-26-

Hence, the court concludes that the Plaintiff is judicially estopped from challenging the termination of the *Membership Agreement* at this juncture.

*(C)     Alleged Violations to the Automatic Stay*

The Plaintiff alleges in the Second Cause of Action of the *Complaint* that "the illegal [pre-confirmation] termination of the *Membership Agreement* was a violation of the automatic stay provisions of § 362 of the Bankruptcy Code" and seeks "actual and punitive damages for violation of the automatic stay" pursuant to Section 362(k) "plus attorney fees and costs" (Docket No. 1-1, p. 11, ¶¶ 59 and 64, and p. 12, ¶ 71).

"Two of the fundamental underpinnings of the [Bankruptcy] Code are the automatic stay and the discharge injunction. The automatic stay has broad application and prevents creditors from seeking to collect a pre-petition debt from debtors or assets of the estate. The discharge injunction safeguards the 'fresh start' of debtors by permanently enjoining creditors from collecting discharged debts." Alley v. Saxon Mortg. Servs. (In re Alley), 2014 Bankr. LEXIS 2843 at *5, 2014 WL 2987656 at *2 (Bankr. D. Me. 2014) (citations omitted).

"The automatic stay imposes on non-debtor parties an affirmative duty of compliance." Otero López v. Dep't of Treasury of P.R. (In re Otero López), 492 B.R. 595, 607 (Bankr. D.P.R. 2013), citing Sternberg v. Johnston, 595 F.3d 937, 943 (9th Cir. 2010). To ensure compliance, Section 362(k) of the Bankruptcy Code provides the necessary means to redress violations of the stay: "an individual injured by a willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and in appropriate circumstances, may recover punitive damages". 11 U.S.C. § 362(k)(1). "A debtor seeking damages under this section bears the burden of proving by a preponderance of the evidence the following three elements: (1) that a violation of the automatic stay occurred; (2) that the violation was willfully committed; and (3) that the debtor suffered damages as a result of the violation." Slabicki v. Gleason (In re Slabicki), 466 B.R. 572, 577-578 (B.A.P. 1st Cir. 2012), citing In re Panek, 402 B.R. 71, 76 (Bankr. D. Mass. 2009). "A willful violation does not require a specific intent to violate the automatic stay." In re Otero López, 492 B.R. at 607. "The standard for a willful

violation of the automatic stay ... is met if there is knowledge of the stay and the defendant intended the actions which constituted the violation." Fleet Mortgage Group v. Kaneb, 196 F.3d 265, 269 (1st Cir. 1999). "The debtor has the burden of providing the creditor with actual notice. Once the creditor receives actual notice, the burden shifts to the creditor to prevent violations of the automatic stay." Id. at 269. "In cases where the creditor received actual notice of the automatic stay, courts must presume that the violation was deliberate." Id. at 269.

Because the Plaintiff is judicially estopped to challenge the termination of the *Membership Agreement*, the court finds that there is no willful violation of the automatic stay and that even if one existed *in arguendo*, it was not willful upon the Plaintiff's own expressions at Lead Case Docket No. 240, p. 2, ¶¶ 7, 8, 9 and 10. Hence, the court hereby dismisses the Second Cause of Action of the *Complaint*.

*(D)     Violations to the Discharge Injunction: Adversary Proceeding or Contested Matter?*

The Plaintiff seeks damages for alleged violations to the discharge injunction under Sections 105 and 524 of the Bankruptcy Code through the instant adversary proceeding. See Docket No. 1-1, p. 9, ¶¶ 48 and 49. The Defendants sustain that: (a) contempt is the normal sanction for violation of the discharge injunction; and (b) even considering *in arguendo* that there is a violation, which they deny, the only remedy available to the Plaintiff would be a compensatory civil contempt motion through a contested matter in the Lead Case, not an adversary proceeding. See Docket No. 52, p. 5. Hence, they seek the dismissal of the First Cause of Action of the *Complaint* "because Plaintiff has improperly attempted to state a claim for violation of the discharge injunction against Defendant[s] through an adversary proceeding" (Docket No. 52, p. 6, ln. 4-6).

The U.S. Court of Appeals for the Third, Sixth, and Ninth Circuits have held that debtors complaining of discharge injunction violations may not proceed by adversary proceeding relying on Section 105. See Joubert v. ABN AMRO Mortgage Group, Inc. (In re Joubert), 411 F.3d 452 (3rd Cir. 2005); Pertuso v. Ford Motor Credit Co., 233 F.3d 417 (6th Cir. 2000); Barrientos v. Wells Fargo Bank, N.A., 633 F.3d 1186 (9th Cir. 2010); Cox v. Zale Delaware,

Inc., 239 F.3d 910 (7th Cir. 2001); In re Laudani, 506 B.R. 19 (Bankr. D. Mass. 2014); Whitaker v. Bank of Am. (In re Whitaker), 2013 Bankr. LEXIS 2328, 2013 WL 2467932 (Bankr. E.D. Tenn. 2013); Tenczar v. Gable (In re Tenczar), 466 B.R. 32, 33 (Bankr. D. Mass. 2012). Notwithstanding, "the First Circuit … ha[s] an established history of permitting aggrieved debtors to seek relief for alleged discharge violations through adversary proceedings." In re Alley, 2014 Bankr. LEXIS 2843 at **8-9, 2014 WL 2987656 at *2, citing Bessette v. Avco Fin. Services, Inc., 230 F.3d 439 (1st Cir. 2000); Collins v. Wealthbridge Mortg. Corp. (In re Collins), 474 B.R. 317, 319 (Bankr. D. Me. 2012) (considering a discharge injunction violation through an adversary proceeding); Canning v. Beneficial Maine, Inc. (In re Canning), 442 B.R. 165 (Bankr. D. Me. 2011), aff'd 462 B.R. 258 (B.A.P. 1st Cir. 2011), aff'd 706 F.3d 64 (1st Cir. 2013) (considering a discharge injunction violation through an adversary proceeding); Pratt v. Gen. Motors Acceptance Corp. (In re Pratt), 324 B.R. 1 (Bankr. D. Me. 2005), aff'd 2005 U.S. Dist. LEXIS 22274, 2005 WL 1961341 (D. Me. 2005), rev'd 462 F.3d 14 (1st Cir. 2006) (considering a discharge injunction violation through an adversary proceeding).

The court is aware that in In re Tenczar, the court *sua sponte* dismissed without prejudice an adversary proceeding complaint for violation of the discharge injunction determining that "actions to enforce the discharge injunction and to seek sanctions on account of discharge injunction violations must be brought as contested matters and not by way of adversary proceedings". 466 B.R. at 36 and 39. The Tenczar court reasoned that the Bankruptcy Rules distinguish "contested matters" from "adversary proceedings, the latter governed by Part VII of the Bankruptcy Rules and commenced by filing a complaint with the court." 466 B.R. at 37, fn.4, citing Fed. R. Bankr. P. 7003. Conversely, Fed R. Bankr. P. 7001 provides an exhaustive list of those proceedings deemed "adversary proceedings" and "contempt proceedings" are not included among them. Hence, the court found that because Fed. R. Bankr. P. 9014 governs the contempt proceedings, discharge injunction violations must be considered as a contested matter under Fed. R. Bankr. P. 9014. See id. at 37.

Notwithstanding, in In re Alley, 2014 Bankr. LEXIS 2843 at *12, 2014 WL 2987656 at *3, the court adopted and followed the reasoning established in Motichko v. Premium Asset Recovery Corp. (In re Motichko), 395 B.R. 25, 33 (Bankr. N.D. Oh. 2008):

> To dismiss on procedural grounds alone would be to elevate form over substance. This is particularly true where ---as here--- an adversary proceeding provides more procedural protection for the defendant than does a contested matter brought by way of motion. Given that this court has the discretion to require the more structured discovery process of an adversary proceeding in a contested matter, the court sees no reason to require Debtors to dismiss this adversary proceeding and refile it as a contested motion. Such unnecessary "hoop jumping" would merely serve to increase the costs of litigation, without providing any real benefit to either party. (Citations and footnotes omitted.)

The Alley court explained that "[t]he discharge injunction is entirely a creature of statute, created by Congress and not by judges. The injunction is the same for any debtor filing under the same Chapter, and is enforceable by any court with jurisdiction over the bankruptcy case and the parties. Thus, the sanctions issued in response to a § 524 violation constitute broader equitable relief referred to in § 105, which may explicitly be sought in an adversary proceeding under [Fed. R. Bankr. P.] 7001(7)." 2014 Bankr. LEXIS 2843 at *11, 2014 WL 2987656 at *3. This court follows and adopts such reasoning. Hence, the court will not dismiss the instant adversary proceeding on those grounds.

(E)    Best Western's Alleged Violation of the Discharge Injunction

The Plaintiff alleges that Best Western's filing of the First Arizona Complaint --through the Helms Defendants-- seeking pre-confirmation damages against it constitutes a violation of the discharge injunction pursuant to the confirmed Plan of Reorganization and the Final Decree. See the First Cause of Action of the Compliant (Docket No. 1-1, pp. 7-9). The Plaintiff seeks damages under 11 U.S.C. §§ 105 and 524. See Docket Nos. 1-1, p. 9 ¶¶ 48 and 49, and 42, pp. 8-9.

"The climactic event in a Chapter 11 bankruptcy is the confirmation of a plan for the reorganization of the debtor's financial dilemma. It is this official judicial approval of the

debtor's plan that triggers an important incentive under Chapter 11, namely, discharge of the debtor's pre-confirmation debts. This discharge is automatic upon confirmation of the reorganization plan and applies to all pre-confirmation debts that have not been excepted from discharge." Williams v. United States (In re Williams), 227 B.R. 589, 593 (D.R.I. 1998). "Confirmation of the plan marks the beginning of the reorganized debtor's new financial life. New legal relationships are established and old ones are modified or terminated." In re Valley Park Group, 96 B.R. 16, 24 (Bankr. N.D.N.Y. 1989). "For corporations and partnerships, the discharge in chapter 11 is an incident of and effective upon the *confirmation* of the reorganization plan." Charles Jordan Tabb, Law of Bankruptcy, Hornbook Series, West Academic Publishing, 3rd edition, 2014, p. 1017 (original italics).

Section 1141 of the Bankruptcy Code governs the effect of confirmation in Chapter 11 cases. "In general, confirmation of a plan discharges the debtor from debts that arose before the date of confirmation, including liabilities that arose from the rejection of executory contracts and unexpired leases, unless the plan or order of confirmation provides otherwise." Hon. Nancy C. Dreher, Hon. Joan N. Feeney and Michael J. Stepan, Esq. Bankruptcy Law Manual § 11:67 Vol. 2 (5th ed. 2013-1), p. 821, citing 11 U.S.C. § 1141(d)(1)(A). In Chapter 11 cases, "[c]onfirmation *immediately* discharges corporate and partnership debtors from all debts that arose prior to the date of confirmation, and replaces those debts with the obligations assumed in the plan." Law of Bankruptcy, *op. cit.*, p. 1180 (original italics). Also see 11 U.S.C. § 1141(d)(1)(A). "The discharge injunction provisions in the Code are written unequivocally and encompass all pre-confirmation claims, known or unknown, without reference to the notice provided to the claimants, see 11 U.S.C. §§ 524, 1141(d), and neither the Bankruptcy Code nor the Rules specify any consequence for failure to comply with the notice rules." Paging Network, Inc. v. Nationwide Paging, Inc. (In re Arch Wireless, Inc.), 534 F.3d 76, 82-83 (1st Cir. 2008). The discharge afforded for Chapter 11 is effective against any creditor, regardless of whether or not a proof of claim has been filed, the claim has been allowed or the creditor has not accepted the plan. See id. "The essence of confirmation is that prior debts and interests are

extinguished and replaced by the debts and interests provided for in the plan and order of confirmation." Bankruptcy Law Manual, *op. cit.*, § 11:67, p. 821. "Corporate and partnership Chapter 11 debtors may obtain a discharge via a Chapter 11 plan, although they are not entitled to a discharge of debts in a Chapter 7 case, unless the plan provides for liquidation of all or substantially all of the property of the estate, the debtor will not engage in business after confirmation of the plan, and the debtor would not be entitled to a discharge in a Chapter 7 case." Id. at p. 822, citing 11 U.S.C. § 1141(d)(3) and 11 U.S.C. § 727(a)(1). "Since the debtor's business entity will exist after the completion of a bankruptcy reorganization, the discharge of prior claims is of paramount importance to the feasibility of that reorganization." Law of Bankruptcy, *op. cit.*, p. 1017.

Section 524 of the Bankruptcy Code incorporates the discharge provisions of Section 1141 and governs the effect of the discharge. See 11 U.S.C. § 524(a)(1).

"[U]nder § 524(a)(2), a discharge operates as an injunction against the enforcement of any discharged debt as a personal liability of the debtor, including the continuation of legal process, offsets, or other collection efforts against the debtor, even if the debtor waived the right to discharge with respect to the debt." Hon. Nancy C. Dreher, Hon. Joan N. Feeney and Michael J. Stepan, Esq. Bankruptcy Law Manual § 8:2 Vol. 2 (5th ed. 2013-1), p. 7-9. In other words, "a discharge in bankruptcy relieves a debtor from all pre-petition debt, and § 524(a) permanently enjoins creditor actions to collect discharged debts". Bessette v. Avco Fin. Services, Inc.*,* 230 F.3d at 444.

In Delgado Laboy v. FirstBank P.R. (In re Delgado Laboy), 2010 Bankr. Lexis 345 at **15-18, 2010 WL 427780 at **5-6 (Bankr. D.P.R. 2010), this court summarized the effect of the discharge injunction in Section 524(a)(2) of the Bankruptcy Code as follows:

> The effect of a bankruptcy discharge is that it "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived." 11 U.S.C. § 524(a)(2). The discharge injunction is the mechanism which allows the debtor to commence debt-free his or her fresh start. See In re Latanowich, 207 B.R. 326, 334 (Bankr. D. Mass. 1997) ("The purpose of the permanent injunction set forth at § 524(a)(2)

-32-

and reiterated in the discharge order is to effectuate one of the primary purposes of the Bankruptcy Code: to afford the debtor a financial fresh start."); Green v. Welsh, 956 F.2d. 30, 33 (2nd Cir. 1992); Baker v. Sommerville Mun. Fed. Credit Union (In re Baker), 2006 Bankr. Lexis 3183 (Bankr. D. Mass. 2006).  The discharge injunction is like a permanent extension of the automatic stay under 11 U.S.C. § 362(a) of the Bankruptcy Code and thus, includes all types of collection activity such as; letters, phone calls, threats of criminal proceedings or other adverse actions brought about with the purpose of debt repayment.  See Alan N. Resnick & Henry J. Sommer, 4 Collier on Bankruptcy ¶ 524.02[2] (15th ed. 2009); Ung v. Boni (In re Boni), 240 B.R. 381, 384 n.5 (B.A.P. 9th Cir. 1999).  Moreover, "[c]reditors are obligated to maintain procedures to ensure that they do not violate section 524, and may be held liable for damages and attorney's fees if they do not."  Alan N. Resnick & Henry J. Sommer, 4 Collier on Bankruptcy ¶ 524.02[b] (15th ed. 2009).  See In re Roush, 88 B.R. 163, 165 (Bankr. S.D. Ohio 1988); Faust v. Texaco (In re Faust), 270 B.R. 310, 317 (Bankr. M.D. Ga. 1998); In re Nassoko, 405 B.R. 515, 521 (Bankr. S.D.N.Y. 2009).  "Although § 524(a), which establishes the discharge injunction, does not include a specific provision setting out available remedies for violations of the discharge injunction, bankruptcy courts invoke § 105(a), which grants bankruptcy court's broad equitable powers, to enforce the discharge injunction, using the mechanism of civil contempt action."  Parker v. Boston Univ. (In re Parker), 334 B.R. 529, 537-538 (Bankr. D. Mass. 2005).  See U.S. v. Rivera Torres (In re Rivera Torres), 309 B.R. 643,647 (B.A.P. 1st Cir. 2004); In re Pratt, 324 B.R. [1, 5 (Bankr. D. Me. 2005)]; Bessette v. Avco Fin. Servs., Inc., 230 F. 3d 439, 445 (1st Cir. 2000), cert. denied, 532 U.S. 1048, 121 S. Ct. 2016, 149 L. Ed. 2d 1018 (2001).

The standard for a willful violation of the discharge injunction under § 524(a)(2) is met if the defendant had knowledge of the discharge injunction and the same intended the actions which constituted the violation.  See Fleet Mortg. Group, Inc. v. Kaneb, 196 F. 3d 265, 268 (1st Cir. 1999); In re Pratt, 462 F. 3d at 21 (1st Cir. 2006); Alan N. Resnick & Henry J. Sommer, 4 Collier on Bankruptcy ¶ 524.02[2][c] (15th ed. 2009).  The defendant must have actual or constructive knowledge of the discharged debt for the knowledge requirement to be satisfied.  See Torres v. Chase Bank U.S.A., N.A. (In re Torres), 367 B.R. 478, 490 (Bankr. S.D.N.Y. 2007).  Civil contempt must be proven by clear and convincing evidence.  Ellis v. Dunn (In re Dunn), 324 B.R. 175, 179 (D. Mass. 2005).

Also see In re Collins, 474 B.R. at 320 ("A creditor violates the discharge injunction when it: (1) commits an act that violates the discharge injunction with the general intent to commit the act and (2) acts with knowledge of the discharge order.")  The court will apply the two-prong test established by the First Circuit in Fleet Mortg. Group, Inc. v. Kaneb, 196 F. 3d at 268, and

In re Pratt, 462 F. 3d at 21, to determine if there was a willful violation to the discharge injunction in the instant case.

First: when Best Western filed the *First Arizona Complaint* claiming pre-confirmation discharged debts on July 23, 2013 (Docket No. 1-1, p. 32-47), it had knowledge of the discharge injunction through the confirmation of their *Plan of Reorganization* (Lead Case Docket No. 190) on March 21, 2013 (Lead Case Docket No. 260).  The confirmed *Plan of Reorganization* contained the following provisions for the discharge and its corresponding injunction:

> 13.1 Discharge.  On the Effective Date of the Plan[6], the Debtor shall be discharged from any debt that arose before confirmation of the Plan, subject to the occurrence of the Effective Date, to the extent specified in § 1141 of the Bankruptcy Code, except that the Debtor shall not be discharged of any debt imposed or maintained by the Plan.  After the Effective Date of the Plan all pre-petition claims against the Debtor will be limited to the debts described in the preceding sentence.

> 13.2 Injunction Relating to the Plan. As of the Effective Date, all Persons are hereby permanently enjoined from commencing or continuing, in any manner or in any place, any action or other proceeding, whether directly, indirectly, derivatively or otherwise against the Debtor and/or its Estate, on account of, or respecting any Claims, debts, rights, Causes of Action or liabilities discharged pursuant to the Plan, except to the extent expressly permitted under the Plan.

Lead Case Docket No. 190, p. 24, ¶¶ 13.1-13.2.

The *Plan of Reorganization* (Lead Case Docket No. 190) was confirmed without objection of Best Western, which it withdrew on February 22, 2013 (Lead Case Docket No. 244).

Second: the court must determine if Best Western violated the discharge injunction and whether it intended such actions.  "To be contumacious, the creditor's action must operate to coerce or harass the debtor improperly."  In re Collins, 474 B.R. at 320.  In the First Circuit, "courts are to use an objective test in determining whether a creditor's actions were improperly coercive under the circumstances."  Lumb v. Cimenian (In re Lumb), 401 B.R. 1, 6 (B.A.P. 1st Cir. 2009).  In Pratt, the First Circuit defined the "objectively coercive" standard explaining that

---

[6] The "Effective Date" was defined in the confirmed Plan as "the later of May 1, 2012, or 30 days after the order confirming the plan becomes a final-unappealable order; and shall be the date on which there shall be made all initial cash payments under the plan" (Lead Case Docket No. 190, p. 8, ¶ 1.21).

-34-

"even legitimate state-law rights exercised in a coercive manner might impinge upon the important federal interest served by the discharge injunction, which is to ensure that debtors receive a 'fresh start' and are not unfairly coerced into repaying discharged prepetition debts." 462 F.3d at 19. "While there appears to be no parallel First Circuit definition for harassment, Congress clearly intended that any behavior engaged in by a creditor that pressures a debtor to repay a discharged debt in any way is prohibited by § 524". In re Collins, 474 B.R. at 320, citing Senate Report No. 95-989 ("[11 U.S.C. § 524(a)] has been expanded ... to cover any act to collect, such as dunning by telephone or letter, or indirectly through friends, relatives, or employers, harassment, threats of repossession, and the like. The change is ... intended to insure that once a debt is discharged, the debtor will not be pressured *in any way* to repay it."). In each case, the conduct of the imputed discharge violation must be assessed "in the context of its particular facts." In re Schlichtmann, 375 B.R. 41, 95 (Bankr. D. Mass 2007), citing Pratt, 462 F.3d at 19.

Best Western alleges that the pre-confirmation damages it claimed in the *First Arizona Complaint* do not violate the discharge injunction because "the Plan, Confirmation Order and Final Decree did not discharge [the] Plaintiff from its obligation to pay administrative priority expenses, including [Best Western]'s Administrative Expense Claim" and that "there is no deadline for filing an application for an administrative claim under the Bankruptcy Code or Rules" (Docket No. 52, p. 6). The foregoing is a clear juxtaposition of Best Western's earlier position in the *Amended Complaint* in the *First Arizona Complaint*, where it stated that "the United States Bankruptcy Court for the District of Puerto Rico entered an Order confirming [the Plaintiff]'s Amended Plan" and that "[t]he entry of confirmation of [the Plaintiff]'s Amended Plan discharged [it] from any claims that arose before the date of confirmation" (Docket No. 1-1, p. 54, ¶ 25).

The pre and post confirmation damages claimed by Best Western in the *First Arizona Complaint* stem from paragraph 24 of the *Membership Agreement* (Docket No. 1-1, p. 26), which provides the following remedies:

For each day during which any Best Western Symbol or any name, symbol or device described in paragraph 23 are used in connection with the Hotel, after fifteen (15) days following termination of this [*Membership Agreement*], Best Western may elect to claim from [the Plaintiff] daily damages in an amount equal to fifteen percent (15%) of the mean of the Hotel's room rates per room per day multiplied by the total number of rooms. This amount is payable by [the Plaintiff] whether or not [the Plaintiff] continues to exercise control over the operations of the Hotel. It is understood and agreed that said amount is fixed as liquidated damages because of the difficulty of ascertaining the exact amount of damages that may be sustained because of such use. It is further understood and agreed that said amount fixed as liquidated damages is a reasonable amount, considering the damages that Best Western will sustain in the event of such use.

In NLBR v. Bildisco & Bildisco, 465 U.S. 513, 531-532 (1983), the U.S. Supreme Court ruled on the legal effect of assumed contracts like the *Membership Agreement* as follows:

If the debtor-in-possession elects to continue to receive benefits from the other party to an executory contract pending a decision to reject or assume the contract, the debtor-in-possession is obligated to pay for the reasonable value of those services which, depending on the circumstances of a particular contract, may be what is specified in the contract. Should the debtor-in-possession elect to assume the executory contract, however, it assumes the contract *cum onere* and the expenses and liabilities incurred may be treated as administrative expenses, which are afforded the highest priority on the debtor's estate, 11 U.S.C. § 503(b)(1)(A).

In In re FBI Distrib. Corp., 330 F.3d 36, 42 (1st Cir. 2003), the First Circuit interpreted Bildisco as follows:

If a debtor in possession assumes an executory contract under subsection 365(a), "it assumes the contract *cum onere,*" and the liabilities incurred in performing the contract will be treated as administrative expenses. Bildisco, 465 U.S. at 531-532.

Likewise, in Eagle Ins. Co. v. Bankvest Captial Corp. (In re Bankvest Capital Corp.), 360 F.3d 291, 296 (1st Cir. 2004), the First Circuit explained as follows:

Under the Code, a rejected contract is considered to have been in breach prior to the bankruptcy petition, leaving the nondebtor party to the contract with a general unsecured claim for contract damages. If the debtor assumes a contract, however, it accepts both the burdens and the benefits of the bargain, and any liabilities incurred in the contract's postpetition performance will be treated as administrative expenses with priority status. By permitting debtors to shed disadvantageous contracts but keep beneficial ones, Section 365 advances one of the core purposes of the Bankruptcy Code: "to give worthy debtors a fresh start." (Citations omitted.)

In a similar vein, in In re Beatriz Ready Mix, Inc., 2009 Bankr. LEXIS 241 at **9-10, 2009 WL 255890 at *3 (Bankr. D.P.R. 2009), the court stated the following:

> Leasehold interests and executory contracts are governed in bankruptcy by section 365 of the Code, which provides, in pertinent part, that the trustee, subject to court approval, may assume or reject any executory contract or unexpired lease of the debtor. It is axiomatic that an executory contract generally must be assumed *cum onere.* A debtor cannot simply retain the favorable and excise the burdensome provisions of an agreement. Only certain contractual provisions, such as those expressly rendered unenforceable by the Bankruptcy Code, *see, e.g.,*11 U.S.C. § 365(e)(1), or those that are designed to thwart bankruptcy policies, are vulnerable. In limited circumstances, however, a court may exercise equitable discretion to refuse to enforce a provision where there is no substantial economic detriment to the non-debtor counterparty shown and where enforcement would preclude the bankruptcy estate from realizing the intrinsic value of its assets. However expansive the bankruptcy court's power may be to protect the property interests of debtors-in-possession, it does not extend to enlarging the rights of a debtor under a contract or rewriting its terms. The judge must look at the totality of the circumstances in order to do equity. (Citations omitted.)

Hence, "[a]n executory contract or unexpired lease that is assumed under section 365 after commencement of the case is entitled to the same treatment as a new contract or lease entered into by the trustee [or debtor-in-possession]. Liabilities for breach, including future rent obligations, which would be prepetition claims if the lease is rejected, are postpetition liabilities when the lease is assumed. As such, any damages for breach of that contract or lease will be entitled to administrative expense priority. When the trustee assumes the contract or lease, the trustee should do so carefully because the trustee runs the risk that a subsequent breach of the contract or lease will create a large administrative expense." Alan N. Resnick and Henry J. Sommer, 4 Collier on Bankruptcy ¶ 503.06[6][a] (16th ed. 2014) (footnotes omitted).

The court must temper the foregoing with Section 503 of the Bankruptcy Code, which governs administrative expenses. "A principal aim of Section 503 is to encourage parties to render post-petition services to debtors by ensuring that payment will be made on a priority basis in the post-petition period." In re Swiss Chalet, Inc., 2012 Bankr. LEXIS 3195 at *11, 2012 WL 2856102 at *4 (Bankr. D.P.R. 2012), citing In re FBI Distrib. Corp., 330 F.3d at 41,

H.R. Rep. No. 595, 95th Cong., 1st Sess. 186, 186-187 (1977); Doctor's Hospital v. Vilar (In re Doctor's Hospital), 1995 U.S. App. LEXIS 1576 at *3, 1995 WL 30903 at *1 (1st Cir. 1995). In Cramer v. Mammoth Mart, Inc. (In re Mammoth Mart, Inc.), 536 F.2d 950, 954 (1st Cir. 1976), the First Circuit established a two-prong test to determine whether or not a claim qualifies as an administrative expense: (1) the right to payment must arise from a post-petition transaction with the debtor's estate, rather than from a pre-petition transaction with the debtor; and (2) the consideration supporting the right to payment must be "beneficial to the estate" of the debtor. This two-prong test was subsequently upheld by the First Circuit in In re FBI Distrib. Corp., 330 F.3d at 42: "In general, for a claim to qualify as an administrative expense under subsection 503(b)(1): (1) it must have arisen from a transaction with the trustee or debtor in possession, rather than from a pre-petition transaction with the debtor, and (2) the consideration supporting the claim must have benefitted the estate in some demonstrable way". Unless set by court order, "Section 503(a) of the Bankruptcy Code does not set a time for filing a request for allowance or payment of an administrative expense and thus, there is no deadline for filing such request." In re Swiss Chalet, Inc., 2012 Bankr. LEXIS 3195 at *13, 2012 WL 2856102 at *5 (Bankr. D.P.R. 2012), citing Texas Comptroller of Public Accounts v. Megafoods Stores (In re Megafoods Stores), 163 F.3d 1063, 1071 (9th Cir. 1998) ("There is no bar date to filing requests for the allowance of administrative expenses under Section 503"); Nancy C. Dreher and Joan N. Feeny, Bankruptcy Law Manual, Volume 1 § 6:33 (2011-12), p. 1056. In the lead case of the instant adversary proceeding, no deadline for administrative expenses was set by the court.

In In re T.A. Brinkoetter & Sons, Inc., 467 B.R. 668, 670 (Bankr. C.D. Ill. 2012), the court considered that "[i]t is difficult to see how liquidated damages in the nature of a penalty could qualify as an expense necessary to preserve the estate". Notwithstanding, "[u]nlike liquidated damages, interest is compensation for the use of money and, as such, is usually considered to be a fair *quid pro quo* for a debtor's failure to pay its obligations on a timely basis, which failure is financially beneficial to the estate and detrimental to the creditor. As

such, an obligation to pay interest may qualify for administrative priority status under section 503(b)(1)." Id. at 671.

This court must also consider whether the pre-confirmation damages sought by Best Western under paragraph 24 of the *Membership Agreement* in the *First Arizona Complaint* actually constitute damages or whether they are a penalty for violating the contract.  To do so, the court must interpret the *Membership Agreement* under Arizona Law, for its paragraph 37 establishes that it "shall be governed and construed according to the laws of the State of Arizona, unless any obligations under this Membership Application and Agreement shall be invalid or unenforceable under such laws, in which the event the laws of the jurisdiction whose law can apply to and validate the obligations under this Membership Application and Agreement shall apply.  The Membership Application and Agreement shall be deemed executed in Arizona" (Docket No. 1-1, p. 28, ¶ 37).  The Plaintiff has not alleged that paragraph 24 of the *Membership Agreement* is invalid or unenforceable, that it lacks a substantial relationship to the parties or transaction or that there is no reasonable basis for the parties' choice, or that application of Arizona Law would be contrary to the fundamental public policy of Puerto Rico in the determination of a particular issue.  A reasonable choice-of-law provision in a contract generally should be respected.  See Restatement (Second) of the Conflict of Laws § 187 (1971); Ferrofluidics Corp. v. Advanced Vacuum Components, Inc., 968 F.2d 1463, 1467 (1st Cir. 1992) (applying New Hampshire choice-of-law principles); Allied Adjustment Serv. v. Heney, 484 A.2d 1189, 1190-1191 (N.H. 1948) (stating that the parties' selection of the law of a particular jurisdiction will be honored so long as "the contract bears any significant relationship to that jurisdiction"); Shelley v. Trafalgar House Pub. Ltd. Co., 918 F. Supp. 515, 521 (D.P.R. 1996) (under Puerto Rico law, a choice-of-law clause will be invalidated only if either (1) the chosen state lacks a substantial relationship to the parties or transaction or there is no reasonable basis for the parties' choice, or (2) application of the law of the chosen state would be contrary to the fundamental public policy of a state with a materially greater interest than the chosen state in

the determination of a particular issue).  Therefore, the court will examine the true nature of paragraph 24 of the *Membership Agreement* under Arizona Law.

Under Arizona Law, "[i]t is well settled that in determining whether a particular clause calls for liquidated damages or for a penalty, the name given to the clause by the parties is not conclusive". Aztec Film Productions, Inc. v. Quinn, 116 Ariz. 468, 470, 569 P.2d 1366, 1369 (Ariz. App. 1977).  While the traditional role of a liquidated damages clause is to provide "an economical alternative to the costly and lengthy litigation involved in a conventional breach of contract action … parties to a contract are not free to provide a penalty for its breach." Pima Savings & Loan Ass'n v. Rampello*,* 168 Ariz. 297, 299, 812 P.2d 1115, 1117 (Ariz. Ct. App.1991).  "Under Arizona law, an agreement made in advance of a breach is a penalty unless both of two conditions are met: 1) 'the amount fixed in the contract must be a reasonable forecast of just compensation for the harm that is caused by the breach', and 2) 'the harm that is caused by any breach must be one that is incapable or very difficult of accurate estimation.'" In re Whitehall Ave., LLC, 2014 Bankr. LEXIS 1349 at *18, 2014 WL 1329354 at *7 (Bankr. D. Conn. 2014), quoting Larson Hegstrom & Assoc., Inc. v. Jeffries*,* 145 Ariz. 329, 333, 701 P.2d 587, 591 (Ariz. Ct. App.1985) (citing Restatement (Second) of Contracts § 356).  Also see In re Vantage Incs. Inc., 328 B.R. 137, 144 (Bankr. W.D. Mo. 2005) ("[a] liquidated damages clause will be enforceable [under Arizona Law] if two requirements are met: (1) the amount fixed in the contract must be a reasonable forecast of compensation for the harm caused by the breach; and (2) the harm caused by any breach must be one that is incapable of or very difficult of accurate estimation"); Pima Sav. & Loan Ass'n. v. Rampello, 812 P.2d 1115, 1118 (Ariz. Ct. App. 1991) (same).  The reasonableness of the forecast and the difficulty of estimation must both be viewed as of the date of execution of the contract, not as of the date of the breach.  See Pima Sav. & Loan Ass'n., 812 P.2d at 1118.  The principal test for determining whether the forecast is a penalty or liquidated damages is whether the payment is for a fixed amount or varies with the nature and extent of the breach.  See id.; Larson-Hegstrom & Assocs. v. Jeffries, 145 Ariz. 329, 701 P.2d 587 (Ariz. Ct. App. 1985); Miller Cattle Co. v. Mattice, 38 Ariz. 180,

298 P. 640 (1931).  It is not necessary for a party relying upon a liquidated damages provision to prove the existence of actual loss or damage.  See Mechanical Air Eng'g Co. v. Totem Constr. Co., 166 Ariz. 191, 801 P.2d 426 (Ariz. Ct. App. 1989).  An unreasonably large sum for liquidated damages may be unenforceable as a penalty.  See In re Vantage Incs. Inc., 328 B.R. at 144; Roscoe-Gill v. Newman, 188 Ariz. 483, 937 P.2d 673, 675 (Ariz. Ct. App. 1997); Restatement (Second) of Contracts § 356 (1981); Pima Sav. & Loan Ass'n., 812 P.2d at 1117. "Whether or not a provision for liquidated damages amounts to a penalty depends upon the circumstances of each individual case…" Best Western Int'l Inc. v. Royal Albert's Palace, Inc. 2011 U.S. Dist. LEXIS 8055 at *15, 2011 WL 285818 at *5 (D. Ariz. 2011).  Also see Best Western. Int'l, Inc. v. Richland Hotel Corp. GP, LLC, 2012 U.S. Dist. LEXIS 24169 at **27-28, 2012 WL 608016 at *9 (D. Ariz. 2012).

The court is cognizant of In re Vantage Incs. Inc., *supra*, a case where Best Western was seeking administrative payment status for the liquidated damages for the debtor's breach of the *Membership Agreement*.  In that case, the debtor owned and operated a hotel that became affiliated with Best Western.  As such, it was entitled to certain benefits, including usage of certain trademarks and logos of Best Western.  The affiliation agreement, like the *Membership Agreement* in the instant case, included a provision for liquidated damages and attorneys' fees and costs in the event of a breach by the debtor.  After the debtor filed its Chapter 11 petition, the court authorized it to assume the affiliation agreement with Best Western upon the condition that certain monetary and non-monetary defaults be cured within specified time periods. Because the defaults were not timely cured, Best Western terminated the agreement.  In allowing an administrative expense claim for the contractual damages, the court held that Best Western had a contractual right to the dues and fees claimed for the balance of the term of the agreement because it was assumed and subsequently breached.  The court reduced the claim for liquidated damages, however, finding that the mean room rate used by the debtor to calculate the amount was more appropriate based on the evidence presented.  The court also reduced Best

Western's claim for attorneys' fees and costs because some of the fees were not expended as a result of the breach of the agreement.

In In re Whitehall Ave., LLC, *supra*, Best Western claimed that the debtor owed it $1,106,527 in post-termination liquidated damages because Best Western's logo could be seen after the debtor covered it with another company's sign.  The court held an evidentiary hearing and, looking "at the particular facts and circumstances of th[e] case", 2014 Bankr. LEXIS 1349 , 2014 WL 1329354 at *7, determined that:

> damages of almost a quarter of a million dollars for a minor technical breach is excessive in light of the minimal, if any, harm to Best Western; and that such a disproportionate result renders the provision, as it pertains to the events [in controversy], an unenforceable penalty clause, rather than an enforceable liquidated damages clause.  2014 Bankr. LEXIS 1349 26-27, 2014 WL 1329354 at *10.

Based on the foregoing, to determine whether the filing of Best Western's *First Arizona Complaint* seeking pre-confirmation damages against the Plaintiff constitutes or not a violation to the discharge injunction, the court must first determine if the damages are or not administrative expenses, for if they are, they have not been discharged through the confirmed *Plan of Reorganization*.  To make such a determination, the court needs to consider the reasonableness of the liquidated damages sought by Best Western, for if they are unreasonable, paragraph 24 of the *Membership Agreement* would constitute an unenforceable penalty, which would not benefit the bankruptcy estate, and hence would not comply with the second prong of the Mammoth test for administrative expenses.  536 F.2d at 954.  This court, however, has not been placed in a position to do so.  Hence, the court cannot dismiss the First Cause of Action in the *Complaint* at this juncture.

In addition, the Plaintiff avers that all of Best Western's "administrative expenses were settled for $20,000 which were paid by [the D]ebtor and received by [Best Western] in full satisfaction thereof" (Docket No. 42, p. 40, ¶ 89) upon the *Settlement Agreement* (Lead Case Docket No. 278).  Best Western contends that the stipulation "resolved *only* the [Best Western] Decree Objection and the Plaintiff has provided no facts to this court to prove otherwise" and

that "to the contrary, the [Best Western] Decree Objection was based solely on [the] Plaintiff's failure to pay pre-termination membership fees, and had nothing to do with the Debtor's concealed and unauthorized use of the Best Western Marks" (Docket No. 24, p. 11, § A(2)). The court notes that the *Objection to Application for Final Decree and Motion for Order Allowing Administrative Expense Claim* filed by Best Western (Lead Case Docket No. 273) refers to post-petition pre-termination fees and dues in the amount of $40,711.87. Upon review of the *Motion in Compliance* filed by the Plaintiff (Docket No. 59), the *Motion in Compliance* filed by Best Western (Docket No. 61) and the *Joinder* filed by the Helms Defendants, this court is unable to determine at this juncture which expenses were settled by the parties in consideration of the $20,000 payment by the Debtor.

*(F)     Best Western's Alleged Violation of the Discharge Injunction in Regards to Tirri*

The Plaintiff claims that the *Amended Complaint* in the *First Arizona Complaint*, which was filed to only seek post-confirmation damages, violates the discharge injunction and the *Final Decree* because it "attempts to circumvent the precepts of the Bankruptcy Code by attempting to collect from Tirri for alleged actions of the Debtor" (Docket No. 1-1, p. 9, ¶ 46).

The court is not moved by such argument. A "Chapter 11 plan of reorganization 'may not preclude lawsuits against a non-debtor shareholder or guarantor, or some other non-debtor third party [like Tirri], even if the plan so provides and is confirmed without any objection by the affected creditor.'" Swiss Chalet, Inc. v. McCloskey Díaz (In re Swiss Chalet, Inc.), 2013 Bankr. LEXIS 1349 at *24 (Bankr. D.P.R. 2013), quoting Thomas J. Salerno, Jordan A. Kroop, Bankruptcy Litigation & Practice: A Practitioner's Guide 2nd Volume (4th ed. 2008).

*(G)     Damages Claimed under Act No. 21*

The Plaintiff alleged in the *Complaint* that it is a "protected sales representative" under Act No. 21. See Docket No. 1-1, p. 18, ¶ 106. Notwithstanding, it later admitted that Act No. 21 is inapplicable to the instant case. See *Amended Opposition to Motion to Dismiss Filed by Best Western and Joinder by Helms Defendants* (Docket No. 42, p. 21, ¶ 79, and p. 22, ¶ 81).

Therefore, upon the Plaintiff's own admission, any cause of action under Act No. 21 is hereby dismissed.

*(H)* *Damages Claimed under Act No. 75*

The Plaintiff alleges in its *Complaint* that it is a "protected dealer" under Act No. 75, that "Best Western's unlawful actions [to wit, the Termination Letter] constituted a termination without just cause of [the Plaintiff]'s dealership … in violation of Law 75…" (Docket No. 1-1, p. 18, ¶¶ 106 and 108).

The court has already concluded that the Plaintiff is judicially estopped from challenging the termination of the *Membership Agreement*. Therefore, the court hereby dismisses causes of action Fifth and Sixth of the *Complaint* under Act No. 75.

*(I)* *Damages Claimed Against the Helms Defendants*

The Plaintiff alleges that Best Western's former attorneys in the *First Arizona Complaint*, the Helms Defendants, "knew, or should have known about [the Plaintiff]'s Bankruptcy and the confirmed Plan" (Docket No. 1-1, p. 7, ¶ 38), and that they acted "in active concert or participation with Best Western" in all of the causes of actions in the *Complaint*, and therefore seeks damages against them on each count. See Docket No. 1-1, p. 19-21.

Because the only cause of action that has not been dismissed is the First one relating to the discharge injunction violation, the court will only consider the allegations against the Helms in regards thereto. The Helms Defendants' liability on a violation to the discharge injunction, if any, is contingent to a determination that the damages in controversy were discharged, as discussed above.

The court considers Gunter v. Kevin O'Brien & Assocs. Co. LPA (In re Gunter), 389 B.R. 67 (Bankr. S.D. Ohio 2008), a case where, after the debtor received a discharge, the law firm representing the creditor sent collection letters to her, attempted to contact her at work, obtained a state court judgment against her and caused the issuance of a garnishment. At the time, the law firm did not check with PACER[7] to determine whether the debtor had commenced

---

[7] "PACER" is an acronym for "Public Access to Court Electronic Records". It is an electronic public access service that allows users to obtain case and docket information from the federal courts, including bankruptcy

-44-

a bankruptcy case or not, a procedure that they subsequently implemented. Soon thereafter, an employee of the law firm checked PACER and learned of the debtor's Chapter 7 bankruptcy case. Two months later, and upon receiving a letter from the debtor's counsel outlining the debtor's claim of a violation of the discharge injunction, the law firm had the state court vacate the judgment. The bankruptcy court held that the law firm violated the discharge injunction, but did so without knowledge of the debtor's bankruptcy. The court determined that the debtor presented no evidence that the law firm delayed in vacating the default judgment in order to lie in wait and passively coerce her to pay the discharged debt, and the debtor suffered no damages as a result of the law firm's activities after it learned of the debtor's bankruptcy.

In In re Barry, 330 B.R. 28 (Bankr. D. Mass. 2005), the court found a creditor's attorney personally liable for violating the debtor's discharge injunction for filing two separate actions in state court against the debtor for discharged debts. The court stated that the creditor's attorney "pursued the [State] Court Actions based upon claims that had been discharged in the debtor's bankruptcy case" and that it was "beyond reasonable dispute" that he "ha[d] violated the discharge injunction". Id. at 36. Hence, the court awarded the debtor compensatory damages against the creditor's attorney in the amount of $22,297.00. Id. at 40.

The foregoing is consonant with the First Circuit's two-prong test summarized in In re Collins, 474 B.R. at 320: "[a] creditor violates the discharge injunction when it: (1) commits an act that violates the discharge injunction with the general intent to commit the act and (2) acts with knowledge of the discharge order". As stated earlier, in our First Circuit "courts are to use an objective test in determining whether a creditor's actions were improperly coercive under the circumstances." In re Lumb, 401 B.R. at 6. "Thus, a debtor need not prove that a creditor acted in bad faith or even that the creditor created all of the circumstances in which the coercion occurred, only that the creditor's actions had a coercive effect upon the debtor." Id. at 7 (citations omitted). "In other words, a creditor need not orchestrate every part of a possible violation of the discharge injunction, nor must it act in bad faith in order for a court to find that

courts. Among other things, it allows interested parties to determine whether an individual has commenced a bankruptcy case and allows access to the bankruptcy docket.

its actions were objectively coercive." Stone v. Highlands Fuel Delivery, LLC (In re Stone), 2014 Bankr. LEXIS 1227 at *13, 2014 WL 1308814 at *4 (Bankr. D.N.H. 2014), citing Pratt, 462 F.3d at 19. The foregoing is also applicable to creditor's attorneys.

In the in the Lead Case of the instant adversary proceeding, the Helms Defendants appeared *pro hac vice* in representation Best Western through CM/ECF since October 5, 2011 (Lead Case Docket No. 43). Since then, it is presumed that they were served with every motion and order entered in the Lead Case through CM/ECF. See P.R. Elec. Power Auth. v. Vitol, Inc., 298 F.R.D. at 26; LBR 9010-1(d)(2)(B). They have not averred any defective filing of any sort regarding the *Amended Plan of Reorganization* (Lead Case Docket No. 190) the *Order Confirming Plan* (Lead Case Docket No. 261). In fact, in the *Notice of Electronic Filing* for Lead Case Docket Nos. 190 and 261, the Helms Defendants appear to have been electronically served. Thus, the court concludes that the Helms Defendants had actual knowledge of the discharge provision in the confirmed *Plan of Reorganization* before they filed the *First Arizona Complaint* on behalf of Best Western. The court finds that such filing is objectively coercive. Hence, the court cannot dismiss the First Cause of Action of the *Complaint* against the Helms Defendants at this juncture.

Conclusion

For the reasons stated above, the *Motions to Dismiss* filed by Best Western and the Helms Defendants are hereby granted as to the Second, Third, Fourth, Fifth and Sixth Causes of Action of the *Compliant*, but denied as to the First Cause of Action regarding the violation of the discharge injunction.

So recommended.

In San Juan, Puerto Rico, this 18th day of September, 2014.

Certification

Because the court has found that there are substantial non-core controversies in the instant adversary proceeding, then it must refer the instant *Opinion and Order* as proposed findings of fact and conclusions of law for the District Court for the District of Puerto Rico to

-46-

review and enter a final order pursuant to Fed. R. Bankr. P. 9033. Hence, the court hereby orders the Clerk of the Bankruptcy Court to certify this proposed *Opinion and Order* to the District Court.

Enrique S. Lamoutte
United States Bankruptcy Judge